———o———

JOHN D. BROWN, *et al.*, Defendants in Error, *vs.* MISSOURI, KANSAS & TEXAS RAILWAY, Plaintiff in Error.

1. *Railroads—Damages—Stock pass—Ejection of wife.*—In an action of damages against a railroad company, by A. and his wife, for ejecting the latter from a train, it appeared that A. made a special contract with defendant for the transportation of stock, which contract provided that none but the owner or persons in charge of the stock should be entitled to a return pass. A. applied to the agent of the road for a pass for his wife, stating that she was the owner of a part of the stock; whereas, she neither owned nor had charge of any of the stock. On this statement the agent issued the pass, saying at the time that he had no authority to issue one to a lady, and doubted if the conductor would recognize it. The pass was given "on account of stock account surrendered," and bore endorsed on the back an acceptance by the wife, subject to its conditions and with the expressed stipulation, that the company should not be liable for any injury to her person or property. The wife, being in company with her husband, offered her pass, which the conductor refused to recognize, and, on her declining to pay the required fare, handed her, without any violence or incivility, from the train; whereupon the fare was paid and plaintiffs re-entered the train and proceeded upon their journey. *Held,* that the procurement of the pass from the agent, by misrepresentations, was a fraud upon the company which vitiated the contract; 'that it was obviously the intention of A. to pay the fare, if necessary to enable his wife to ride, and in view of this fact and the conduct of the conductor, plaintiff had no ground for punitive damages, such as might be given in case of a real expulsion.

*Error to Henry County Circuit Court.*

*Jno. Montgomery, Jr.*, for Plaintiff in Error, cited: Blower vs. G. W. R. R. Co. [1872], L. R. 7, C. P. 655; Kendall vs. L. & G. W. R. R. Co., Law Tim., 5th June, 1872; Louisville, Cin. & Lex. R. R. vs. Hedger, 13 Am. Law Reg., p. 145, March, 1872; Sto. Agen. §§ 56, 75, 228; Sanford vs. Handy, 23 Wend. 268, and cases cited; Towle vs. Leavitt, 23 N. H. (3 Frost), 360; Sherman vs. C. & N. W. R. R., 40 Iowa, 46; Bragg vs. Bram-

berger, 23 Ind. 200 ; Gillett vs. Missouri Valley R. R., 55 Mo. 322 ; Kennedy vs. North Mo. R. R. Co., 36 Mo. 365 ; Buckley vs. Knapp, 48 Mo. 152 ; Tarhill vs. C. P. R. R. Co., 34 Cal. 623 ; Illinois Cent. R. R. Co. vs. Johnson, 67 Ill. 36 ; Chicago & Alton R. R. Co. vs. Flagg, 43 Ill. 364 ; Illinois C. R. R. Co. vs. Johnson, 67 Ill. 315 ; T. H., A. & St. L. R. R. Co. vs. Vanatta, 21 Ill. 188 ; Ackley vs. Staehlin, 56 Mo. 558 ; Dedo vs. White, adm'r, 50 Mo. 241.

*Boone & Johnson*, for Defendants in Error, cited : New York Central Railroad Co. vs. Lockwood, 17 Wall. 357 and authorities cited.

NAPTON, Judge, delivered the opinion of the court.

This is an action brought by Brown and wife to recover damages from the railroad company, the defendant, for ejection of his wife from a passenger car, on a trip from Hannibal to Montrose, in Henry county, where the plaintiffs lived.

The facts in the case appear to be undisputed and may be substantially stated as follows : The plaintiff, Brown, had a contract with the defendant to transport four car loads of stock from Montrose to Hannibal. The contract contained a provision authorizing the owner of the stock and one or two employees, according to circumstances, to ride upon the train in which the stock was transported, and the agents of the company were authorized to issue passes, both to the owner and the employees accompanying the stock to their destination and for their return. By the special contract made in this case, it was provided, that no person except the owner or parties in charge should be entitled to a return pass, the intent being declared to be to enable " *said owner or his men in charge, as expressed in the contract, and no other person, to return on such pass.*"

Upon the contract the following rules were indorsed : " For the purpose of taking care of the stock, the owner or men in charge will be passed on the train with it, and all persons thus passed are at their own risk of any personal injury from any cause whatever, and must sign release to that effect on contract."

" The agent, at the station where the stock is loaded, will enter on the back of the contract the name or names of persons who are thus to be passed free with the stock, which is authority for the conducter to pass them." " Agents will refuse to enter any name on contract but those of owner or employees in charge, and who accompany the stock, without regard to passes required by number of cars."

The plaintiff applied to the agent of the defendant at Montrose for tickets for himself and "L. Brown." After some conversation between the parties, the agent ascertained that L. Brown was the wife of the owner, and expressed his doubts as to whether he had any authority to issue such a pass, and also some doubt as to whether the conductor would allow Mrs. Brown to travel on such a pass, if issued.

However, upon Mr. Brown asserting that his wife was the owner of the stock on two of the cars, the passes were issued, the agent stating at the time that he had never issued a stock pass to a lady, and he doubted if the conductor would recognize it. It subsequently appeared upon the examination of Mr. Brown upon the trial, that he was the sole owner of all the stock on the cars, and that his wife, with a young daughter, was making a visit to some relation in Illinois, near Hannibal. At Hannibal, Mr. Brown, on his return from Chicago, the ultimate destination of his stock, applied to the agent at Hannibal for passes, one for himself and one for "L. Brown," presenting at the same time a stock contract to the agent. The agent asked him where his other *man*, L. Brown, was. To which Mr. Brown replied, " the other man is my wife." The pass was finally given and was as follows :

" Missouri, Kansas & Texas Railway return stock pass good for one trip and one person only. Conductor will take up this pass.
                    " Hannibal, Feb'y 11th, 1874.

"Pass L. Brown from Hannibal to Montrose on account of stock contract surrendered, dated Jan'y 17th, 1874, for four cars ; must be countersigned by agent at Hannibal.
                    " F. W. BOWEN, Gen. Sup't.
" Countersigned, L. S. ALLEN, 29.

" Not transferable and void if presented after one month from date of contract, as herein expressed."

On the back of the above ticket was the following agreement:

1874.

" In consideration of receiving this free 27 return pass, I accept it subject to the conditions expressed thereon, and hereby expressly agree that said company issuing it shall not be liable for any injury to my person or property.

" A."                                                    L. BROWN."

The conductor on the train from Hannibal to Paris refused to recognize the validity of the pass, and requested Mrs. Brown to leave the cars unless her fare was paid. Mr. Brown advised her to remain in the car until she was put off. After considerable discussion between the plaintiff and the conductor, Mrs. Brown was put off the cars in the vicinity of Paris about 10 o'clock in the morning, but immediately re-entered, her husband having paid her fare. No incivility was offered her, or any want of courtesy displayed by the conductor, either in handing her off the cars or placing her back, as she states herself. It was conceded that Mrs. Brown really exercised no care over the stock, but was making a trip to some relatives in Illinois. Upon the trial the court instructed the jury as follows for the plaintiffs:

1. "It is admitted by the pleadings that plaintiff, John D. Brown, did make a written contract with defendant for the transportation, for a valuable consideration, of four car loads of stock from Montrose to Hannibal; that by virtue of said contract said John D. Brown was entitled to two return tickets or passes from Hannibal to Montrose upon defendant's passenger cars; that on the tenth day of February, 1874, said John D. Brown presented to the agent of the defendant, at Hannibal, the copy of said contract in his possession, and did receive from defendant's agent, at Hannibal, two return tickets or passes, *authorizing* the parties therein named to travel on the passenger cars of said defendant from Hannibal to Montrose; and if the jury find from the evidence that at the request of the plaintiff, John D. Brown, one of said return tickets or passes was made out in the name of Louisa Brown, one of the plaintiffs, and was signed and ac-

cepted by her, who was then, and is now, the wife of the other plaintiff, said John D. Brown, and the same was delivered to said Louisa Brown for her use ; that on said day she entered into and took her seat in a passenger car of defendant at Hannibal, then forming part of the train of cars about starting for Montrose and other points southward ; that the train did start and after traveling some distance in the direction of Montrose, the conductor of said train and agent of defendant refused to recognize said return ticket or pass of plaintiff, Louisa Brown, and demanded the usual fare ; that said plaintiff, Louisa, declined and refused to pay it ; that after her refusal to pay, and also after the refusal of her husband, John D. Brown, who was present, to pay for her, the said conductor, being agent of the defendant, required said plaintiff to leave the car and train, and said conductor did cause the said train to stop and put the said Louisa Brown off the car and train, and these facts being admitted or found by the jury, from the evidence as aforesaid, the finding must be for plaintiffs ; and in determining the amount of damages, the jury will take into consideration all the facts and circumstances given in evidence, and assess the damages accordingly."

2. "In assessing damages the jury will take into consideration the time, place and manner of ejecting plaintiff, Louisa Brown, from the car, and if the jury believe, from the evidence, that she was put off the car at a point on the road where there was no station, and not at or near any house, or that it was in the woods out of sight of any house, or that the roads were in bad condition for a female to travel on foot ; all these may be taken into consideration in assessing the damages."

3. " Corporations can only act through agents and are liable in damages for all acts of their authorized agents, when performed in the line of their duty."

4. " The court instructs the jury that the return ticket or pass, read in evidence and indorsed by L. Brown, was a legal pass and authorized her to travel on defendant's train from Hannibal to Montrose."

Eight instructions were asked by the defendant, based substantially upon the assumption that this pass to Mrs. Brown, as

L. Brown, was prohibited by the rules of the company, and by the special contract in the case, and that the pass was void, and that the conductor had a right to remove Mrs. Brown from the train, provided it was done at or-near a station or dwelling house, and unaccompanied by any force or incivility to the lady.

These instructions were refused. The jury returned a verdict for fifteen hundred dollars damages, of which, at the suggestion of the court, seven hundred and fifty dollars were remitted, and the court entered judgment on the verdict.

The promptness with which juries usually inflict punishment for the incivilities or brutalities which occasionally characterize railroad officials, seems hardly sufficient to account for the verdict in this case. The bare statement of the facts would appear sufficient to show the want of all merit in the plaintiff's claim. It is based on a successful attempt to procure from the agent of the railroad company passes, to which, as the applicant and agent both knew, the applicant was not entitled. The printed contract and regulations attached to it were clear, that, under these special stock contracts, females were not entitled to passes. When, therefore, Brown represented his wife to be part owner with a view to furnish the agent with a plausible excuse for his breach of authority, he admitted that upon his own construction and knowledge of the transportation contract he could not pass his wife as an employee. The agent had no authority to issue passes to a lady on a stock contract, and Mrs. Brown and her child could not and did not pretend to exercise any supervision over the stock at the commencement or during the continuance of the trip ; and the plaintiff admitted that his statement in regard to her interest in the stock was false, and she had no other-interest than such as she had in all his personal property.

There is no difficulty in distinguishing this case from cases where an agent exceeds his authority, which is a general one, and its limitations are unknown to the party dealing with him. The contract itself and the regulations printed on it, and the form of the pass issued, could not be misunderstood. A party dealing with the agent in this case, was a party to the fraud committed on the principal.

In regard to the place where the conductor handed the lady off the train, the inconvenience might undoubtedly justify damages in a case where there was a real expulsion ; but the train stopped at Paris, where the conductor proposed that Mrs. Brown should get off, and where she only refused to get off at the suggestion of her husband, who was bent on getting up a case for damages, and therefore insisted she should stay on the cars until she was put off. The testimony of Mrs. Brown acquits the conductor of any incivility whatever, and states, too, in her own language, that he acted "very genteelly." And as it was obviously Mr. Brown's intention to pay the fare as soon as he was satisfied that his wife could not proceed on the train without doing so, and he could get the conductor to put her off, we are unable to perceive any grounds upon which punitive damages were inflicted.

According to the statement of the conductor, who seemed reluctant to remove Mrs. Brown from the train, it was suggested that if she would pay the fare, the conductor would telegraph his superintendent, and if it was ascertained that he misunderstood his duties, the money would be returned. This proposal was declined under the impression, no doubt, that this stock pass to Mrs. Brown, however procured, and under whatever circumstances issued, would, if violated, furnish a cause of action against the company.

The judgment is reversed and the cause remanded. All the judges concur, except Sherwood, C. J., who is absent.