### SMITH v. THE C., R. I. & P. R. Co.

1. **Negligence:** WHEN CONTRIBUTORY: RAILROADS. The plaintiff, in assisting a passenger to a train on defendant's road in the night time, attempted to pass under one of a train of freight cars standing across the road, to which an engine was attached, and while under the car was injured by the starting of the train: *Held*, that he was guilty of contributory negligence precluding a recovery.

*Appeal from Jefferson Circuit Court.*

WEDNESDAY, DECEMBER 8.

THIS is an action to recover damages for personal injuries inflicted by the defendant. Upon the production of the plaintiff's evidence the court, pursuant to a request of defendant, instructed the jury to return a verdict for the defendant, which was done. The plaintiff excepted and appeals.

*Leggett & McKemey*, for the appellant.

*Slagle, Acheson & McCracken*, for the appellee.

DAY, J.—The evidence shows the following facts: The plaintiff keeps a hotel at Perlee, Jefferson county. The side-track of defendant's road passes within about five feet of plaintiff's house. East of this side-track is the depot, and east of the depot the main line. The county road runs east and west just south of plaintiff's

house and depot. Across the road there is a small culvert, connecting with a ditch. On the night of the 31st day of July, 1877, a freight train came in from the north, and side-tracked upon the west track, the locomotive extending over the culvert in the road.

The plaintiff in his testimony explains the situation as follows: "South of the depot there is a ditch that runs east and west that carries water, and south of that there is a ditch between the side-track and the main-track, and there is generally water there, and that is quite a length. You would have to go pretty near the points of the switch to be anyways level, and after you get back there, there is the ditch and the culvert; the grade north of my house is very bad; the ground between our house and the stock-yards is very bad, in fact there is no passage there."

*Question.* "Can you go through there on the south side?"
*Answer.* "No, sir."

*Question.* "Can you go through there on the north side?"
*Answer.* "No, sir."

On cross-examination the witness stated: "There was no way to go around the end of the train. On the south there was a ditch to cross that drains the mines. Sometimes there is a great deal of water in it. I do not know whether it was running that night or not. There is a pond nearly all the time between the side-track and the main track. Could not have gone around the cattle pens very well; there are ditches there; I would not like to risk it at night."

The train lay across the highway for about three-quarters of an hour, and was not cut. One Bedford was selling goods at the plaintiff's door. When he heard the freight train coming in from Fairfield he began to gather up his things, saying he wanted to go on the train coming in. Upon this branch of the case the plaintiff testifies as follows: "Capt. Bedford asked me to help him to the caboose. I picked up one of his satchels and we started. I could not get through on the street, the train was there, and I could not get through

on the south, and the other train had come in, and I think there were some coal flats pushed on ahead there, and there was a big ditch there and a culvert, and when we got about the middle distance between the water-tank, about fifty or sixty feet from the front of my building, he started through under the bumpers, where the pins go in, and I would not go in there, but I passed him through his satchels, and he pulled them through and went on, and I went to about the middle of the car, and stopped about two seconds to see if the train would move. That was before I got under the car. I knew if they made a signal I could get through before they backed, for I have done it; and I started under the car, and just as I got fairly under, why they backed right up. The first thing I heard was the click of the brakes, and it was pretty dark, and I squatted down as low as I could, so my head would not strike the car, and I sprang out this way (showing how), and this leg was a little behind and the leg got caught with the wheel there, between the wheel and rails. There was no signal made, no bell rung or whistle blowed. I was going back there to help Mr. Bedford with his valises, and see if there was any passengers there for the hotel. He asked me to go and buy his tickets. The caboose had backed there, and the situation of the ground was such that a person could not go there from the hotel without a person to show them. I found my leg was mashed, and I rolled over so the cars would not strike me. It appeared there was some little slack and I pulled my leg out. I cannot walk with my leg to do any good. I was in bed for three months. The bones in my leg were all mashed. I have to use crutches all the time. I knew the train would not stop at the depot after it got on the main-track; the train hands told Mr. Bedford that it would not."

The plaintiff further testifies as follows: " The engineer knew we were going back; knew where we were going: we told him we were going on the caboose just before he started back. I told the engineer we had to get through; that the

man had to get on the train, and would have to go through the train. I heard parties tell them to open the way and the man said 'go to hell'; he had stayed there a long time, and finally asked them if they were going to cut that train, and he told him to 'go to hell, we are running this train,' and we told the engineer we wanted to go back and go through the train as they would not open the crossing."

Under the testimony of the plaintiff we feel satisfied there can be no recovery. It is difficult to conceive of an act more recklessly careless than an attempt in a dark night to crawl under a freight train with locomotive attached. The plaintiff has not the excuse of a passenger desirous of taking a train, for he did not intend to become a passenger upon the train. But in our opinion a passenger is not justified in recklessly endangering his limbs and life for the purpose of taking a train. If reasonably safe access to the train is not provided he ought to forego becoming a passenger upon the train and look to the company for damages sustained. The rule which denies relief to a party guilty of contributory negligence is based upon grounds of public policy, which require, in the interests of the whole community, that every one should take such care of himself as can reasonably be expected of him. Shearman and Redfield on Negligence, section 42.

It would be utterly subversive of this doctrine if there could be a recovery under the facts of this case. In our opinion the court properly directed a verdict for the defendant. See *McAunich v. M. & M. Railroad Company*, 20 Iowa, 338 (346); *Artz v. C., R. I. & P. Railroad Company*, 34 Iowa, 153 (159); *Dodge v. B., C. R. & M. R. R. Co.*, 34 Iowa, 276; *Lang v. Holiday Creek R. R. Co.*, 42 Iowa, 677; *Murphy v. C., R. I. & P. R. Co.*, 45 Iowa, 661.

In *Rauch v. Lloyd*, 31 Pa. St., 358, cited by appellant, the party injured by passing under the train was a lad six or seven years of age. The decision was placed upon the express ground that the rule, applicable to an adult, cannot be

applied to a child of such tender years. It was conceded that if plaintiff had been an adult, of ordinary prudence and discretion, there could be no recovery.

AFFIRMED.