RICHMOND & DANVILLE RAILROAD CO. *v.* R. T. BURNSED.

1. RAILROADS. *Shipment of live-stock. Transportation of shipper.*

    A stipulation in the bill of lading of live-stock that the shipper designated in it may accompany the stock on the freight-train free of charge can be availed of only by him. Another, though assisting the shipper, and claiming an interest in the stock, who, without procuring a ticket or tendering his fare, also boards the train with the shipper, intending to ride free, does not thereby become a passenger.

2. SAME. *Trespasser on train. Injury to. Case.*

    And if, soon after boarding a train, a collision is imminent, and, to avoid danger, such person leaps from the train, and is injured, he will not be held to have acquired the rights of a passenger, merely because he had entered the caboose with the shipper, without objection by the conductor, who merely expressed surprise that he also was going, it appearing that the conductor was busily occupied, and, up to the time of the accident, had not demanded his fare, or seen the bill of lading, or learned of such purpose to claim free passage under it.

3. RAILROADS. *Injury to trespasser. Liability for.*

    In the absence of wantonness or wilfulness on the part of the servants of a railroad company, it is not liable for injury to trespassers, whether in its train or on its track.

FROM the circuit court of the first district of Carroll county.

HON. C. H. CAMPBELL, Judge.

Action by appellee, Burnsed, against the appellant company, to recover damages for personal injuries. He received the injuries complained of by leaping from a running freight-

train of defendant to avoid an impending collision with a passenger-train. It is not contended, in behalf of the railroad company, that plaintiff's leaping from the train was not made necessary by the apparent imminent danger of the collision, this having been brought about in consequence of the absence of proper signals. The depot agent at Winona testified that he had displayed a red flag, the usual signal to prevent the freight-train passing his station, and that this was removed by some unknown party. The main contention between the parties is as to whether, at the time of the injury, plaintiff was a passenger.

The facts in evidence throwing light on this controverted question are, briefly stated, as follows : One Gresham, a dealer in mules, shipped from Winona to Greenwood, stations on defendant's railroad, two car-loads of mules. Burnsed, the plaintiff, had agreed with Gresham to buy two of the mules, promising to give security that would be acceptable, but they . had signed no written contract, and plaintiff had paid nothing. The bill of lading for both car-loads of mules was made out in favor of Gresham, as the shipper, and consigned to him at Greenwood. As is usual in such contracts for the shipment of live-stock, it was stipulated that Gresham should have free transportation on the freight-train carrying the stock. Several of the mules belonged to the father-in-law of plaintiff, and plaintiff had these in charge, but the contract for the shipment was made entirely with Gresham. Plaintiff's name did not appear in the bill of lading, and he was not known to the agent of defendant in the transaction, but, in connection with one Neily, he assisted Gresham in loading the mules into the cars. When the freight-train, containing the loaded cars, left the depot at Winona, Gresham, Neily and the plaintiff, having been informed that the train would stop at a tank and crossing in another part of the town, overtook the train there, and entered the caboose. The conductor assisted them to enter, remarking at the time, " I didn't know that you were all going with the stock ; you

liked to have gotten left." He then sat down, and was busily occupied writing, and made no other remark to them. Before reaching the first station, a passenger-train was discovered approaching on the same track. The brakes were applied to the freight-train, and all on board leaped from the train to escape the danger of the collision. The collision was averted, but plaintiff sustained severe injuries.

The conductor of the freight-train testified that, after leaving Winona, which was a junction point, he was busily occupied checking up way-bills; that, up to the time of the accident, he had not examined the bill of lading, and did not know that plaintiff and Neily were also claiming the right to free passage on the train; that, for this reason, he had not demanded their fare. It was shown in evidence that the rules of the defendant prohibited the carrying of passengers on freight-trains, except in cases where the shipper of live-stock was given free transportation. It was further shown that, under the rules of defendant, free transportation was given to only one man, where the shipment of stock did not exceed two car-loads.

On the trial, the above facts having been developed, the court refused to grant a peremptory instruction in favor of the defendant. It instructed the jury that, under the evidence, plaintiff was not a passenger, but that if the jury believed from the evidence that the defendant was guilty of gross or wilful negligence, it was liable, although plaintiff was not a passenger.

It is not necessary to set out the other instructions given or refused. The plaintiff had verdict and judgment for $2,500. Motion for new trial overruled, and defendant appeals.

*A. F. Fox*, for appellant.

The peremptory instruction for defendant should have been granted. Plaintiff declared on a contract between the company and himself as a passenger in charge of stock owned

by him. The declaration is not sustained. He owned no stock, was not a shipper and was not a passenger, or even a licensee. The defendant owed him no duty, and would be liable to him only for wilful wrong. Granting the negligence of defendant, causing the danger of collision, it is clear that there was no wilful or intentional injury. The court rightly charged that plaintiff was not a passenger. Freight conductors have no implied authority to invite strangers to become passengers. In the absence of express authority, their invitation cannot make strangers passengers. Patterson's Ry. Ac. Law, 299. When the conductor expressed surprise that all three were going, plaintiff made no reply, and thus, through his own fraud and deceit, was permitted to board the train. Plaintiff had no intention of paying his fare, and, as he was riding on a freight-train, in violation of the rules of the company, he cannot recover for injuries caused by mere negligence. This is true, even if the injured person is a licensee on the train. 153 Mass., 188; 47 Am. & Eng. R. R. Cases, 580; 2 *Ib.*, 1; 51 Conn., 143; 93 Ala., 356; 91 Pa. St., 458.

The railroad company is not liable to passengers on freight-trains except for gross negligence. Certainly they are under no obligations to trespassers, except not to inflict on them wanton or wilful injury.

*Southworth & Stevens*, and *Calhoon & Green*, for appellee.

Appellee was not a trespasser. He had an interest in the stock. He was on the train by invitation of the conductor, and was rightfully in charge of the stock. He was asked for no fare. The remark of the conductor, as plaintiff entered the caboose, was apologetic for going off to the tank without him. Whether plaintiff was named in the bill of lading or not, the conductor treated him as owner of the stock, and recognized his right to be on the train. It is not known that plaintiff knew of any regulation limiting the number who could accompany a shipment of live-stock.

It cannot be denied that the agent at Winona was negligent in not keeping a watch over the signal-flag and keeping it exposed: In any aspect the company is liable for gross negligence. This is the theory upon which the case was tried. 2 Redfield on Railways, 235; 93 U. S., 291; 95 *Ib.*, 635; 2 Beach on Railways, § 857; Patterson's Railway Ac. Law, § 210.

That plaintiff was not a trespasser but a passenger, see 4 Am. & Eng. Railroad Cases, 589; 2 Woods on Railroad Law, 1045; Beach on Railroads, § 857; 2 Redfield on Railways, 236; Patterson's Railway Ac. Law, 204; 14 How., 468; 12 Wall., 369.

That liability is fixed by wilful wrong alone, is in conflict with *V. & M. R. R. Co.* v. *Phillips*, 64 Miss., 693. We refer the court to the first refused instruction in that case. See also *Railroad Co.* v. *Allbritton*, 38 Miss., 242; *Express Co.* v. *Brown*, 67 *Ib.*, 260.

Argued orally by *A. F. Fox*, for appellant, and *W. F. Stevens*, for appellee.

WOODS, J., delivered the opinion of the court.

The appellee's theory of the case, as disclosed in his declaration, is that he was a passenger on a freight-train by virtue of a contract of carriage of stock made with the appellant, under which he was entitled to free transportation because of his ownership of a part of the mules. The appellee's evidence utterly fails to support his theory. It is manifest that the stock was owned by Gresham and Loudon, and that the contract of carriage was made with Gresham alone. It is equally certain that Gresham's name alone appeared in the bill of lading, and that he alone was by the contract entitled to the free transportation. It is admitted that all of the animals were consigned to Gresham, at Indianola. By the appellee's own testimony, he had merely a verbal agreement to buy some of the mules, after Indianola had been reached,

and then only if he could make the security required. It is idle to discuss the question of ownership. The appellee conclusively fixes that in Gresham. By his own evidence, too, he is shown to have been improperly on the train. He had no contract with the railroad; he was not even seen by the railroad agent; he did not go near him when the contract was made; his name was not mentioned to the agent, and was not inserted in the bill of lading, as must have been done to entitle him to transportation. He was a trespasser, pure and simple. He was attempting to get a free ride from Winona to Indianola when he received the lamentable injury complained of. The learned judge in the trial court properly declared to the jury that appellee was not a passenger, and was not entitled, under the rules of the defendant company, or by virtue of any contract with the company, to ride on that train. He was a naked trespasser, and his right to a recovery must be determined by the wantonness or wilfulness of the company's servants in the matter complained of. The company owed this trespasser no duty other than that of doing him no wanton or wilful hurt. The company was not answerable to him for negligence, for it was under no obligation, contractual or other, to carry him safely. Gross negligence, by the statute law of this state, is made the test of a right to recovery by a passenger on a freight-train, and we have never anywhere seen that a passenger and a trespasser occupy the same relations to the carrier, or that they stand upon the same ground. The company was under no contract, express or implied, to safely carry appellee. He was attempting wrongfully to secure a ride without paying for it, and he must be held to have assumed all the perils incident to the ride. Under settled rules of public policy, railway companies are not to be made liable for injuries received by trespassers upon their trains, unless the injury is inflicted under circumstances indicating wantonness or wilfulness in the servants of the companies. The rule seems to be almost universally

recognized and approved, and is in consonance with reason and right.

*Toledo Ry. Co.* v. *Brooks*, 81 Ill., 245–292; *Chicago R. R.* v. *Michie*, 83 Ill., 427; *Toledo Ry. Co.* v. *Beggs,* 85 Ill., 80; *McConley* v. *Tenn. Co.*, 93 Ala., 356; *Louisville Ry. Co.* v. *Phillips*, 112 Ind., 59; *Powers* v. *Boston R. R.*, 153 Mass., 188; *Brown* v. *Missouri Ry. Co.*, 64 Mo., 536; *Duff* v. *Allegheny R. R. Co.*, 91 Pa. St., 458; and *Gardner* v. *New Haven Co.*, 51 Conn., 143, were all cases involving the rights of intruders in cars, trespassers on trains, and not trespassers on tracks or premises, and the foregoing doctrine, as stated by us, was applied as recognized law. The doctrine is to be found in the text-books generally.

Can it be seriously insisted that a trespasser upon a train occupies a better position than trespassers on tracks? If degrees in trespass could be established, it occurs to us that the train trespasser is a greater wrong-doer than the track trespasser. He, like the track trespasser, is entitled to exemption from wanton or wilful injury, or. from injury that might and should have been avoided by the railway company after seeing the danger of the trespasser's situation. This court has repeatedly so held. *Stroud* v. *M. & O. R. R. Co.*, 64 Miss., 784; *Dooley* v. *M. & O. R. R. Co.*, 69 Miss., 648; and *Railway Co.* v. *Williams*, 69 Miss., 631.

The able counsel for appellee is mistaken in supposing that the case of the *V. & M. R. R.* v. *Phillips*, 64 Miss., is in conflict with the preceding opinion, or that it is authority for the doctrine that negligence alone will entitle a trespasser to recover for injuries received without fault on the part of the railroad company's servants after seeing the trespasser's peril. In that case, a little boy of tender years was enticed upon a train side-tracked at Jackson by the music of a band playing thereon, and was cursed and driven out by a railroad employe after the train had got in rapid motion, whereby, in an effort to escape the abusive and profane and threatening employe, the child fell under the wheels of the train, and

was horribly mutilated. The second instruction asked for the railroad in that case sought, virtually, to constrain a verdict for the company by excluding from the jury's consideration the peril of the child, and the railroad's knowledge of that peril, when the child was being cursed and driven from the car, as well as all inquiry as to whether, but for the employe's outrageous behavior in the perilous situation of the child at the time, the injury would not have been averted. An instruction should be applicable to the facts of the particular case; and the second instruction of defendant, refused by the court in the Phillips case, did not meet this sensible requirement.

That the appellee was not a passenger by invitation or license from the conductor is too clear for controversy. When the appellee and his two companions overtook the train at the tank, the remark of the conductor was expressive of his surprise at the appearance of *all* the persons as passengers under the contract of carriage for the car-load of mules. He did not then know what rights they, or any of them, had acquired under that contract, and he had no opportunity or occasion to examine the bill of lading, which served the purposes of a ticket in such case, and ascertain whether appellee was rightfully on the train, before the accident occurred. He simply did his duty in courteously receiving a professed passenger—one holding himself out as a passenger—and in courteously treating him, in the absence of knowledge that the ostensible passenger was, in fact, a mere trespasser.

The peremptory instruction asked by the appellant should have been given, and, for the error committed in refusing it, the case must be reversed. This view obviates the necessity of passing upon any of the other contentions.

*Reversed.*