BREAUX, C. J.
Personal injury suit for $5,000 damages, decided by the court without* a jury. Plaintiff’s demand, rejected.
On the morning of the 16th day of February, 1912, plaintiff, a traveling salesman, boarded the 7:15 train, west bound, of the defendant company, and stopped at Choudrant to canvass for business, and thereafter, at about 8:40 a. m. to take the east-bound train. There was a difference in time of the two passenger trains of 35 minutes, which time was taken up in canvassing. Plaintiff hastened in his canvassing work, heard the east-bound train’s whistle, took up his hand satchel, and ran toward the depot, a distance of about 150 feet from the store at which he was when he heard the whistle.
A west-bound freight train stopped at or near the depot. Two men in front of plaintiff were going in the same direction. They passed on their way to the depot in an opening of about 3 feet between two of the freight cars.
Plaintiff thought the freight train would not move until the passenger train had passed. He evidently thought that a few seconds were all that was necessary for him to pass without accident.
He was passing between the cars; the engineer suddenly in backing “took up the slack” in order to start on its way. In the movement of the cars, plaintiff’s foot was caught and crushed, inflicting excruciating pain, and causing severe injury.
Plaintiff charged: That the negligence of defendant is the cause of his injury. That the road was illegally and wrongfully blocked- by defendant’s train for more than 20 minutes before the arrival of the east-bound train. That he and other passengers were compelled to pass through the freight cars or climb over or pass under the cars. That defendant’s employés should have uncoupled the cars, and left the highway clear, and the approach to the depot unobstructed.
Defendant filed a general denial. While admitting plaintiff’s injury, it averred that it was due to his negligence and recklessness in suddenly, without necessity, and without notice to or knowledge of its trainmen, attempting to cross by climbing over the couplers between the freight ears which were a part of and coupled to its freight train.
Facts.
[1-3] For 16 months preceding the day on which plaintiff was injured, he, as traveling agent, made hasty trips to Choudrant.
The following is a description of the locality :
The main highway runs north and south, and passes at the west end of the depot. There are two side tracks north of the main line along the depot that cross the public highway; they are about 10 feet apart. The side track next to the main line is about 50 rail lengths long east and west; it extends about 17 rails in length west of the depot, and 15 rails in length west of the place where the plaintiff was hurt.
On the day that the plaintiff was injured there was a west-bound freight train on *447 the side of the track next to the main line, and it was there at the time that the eastbound passenger train pulled up to the depot. The freight train had stopped to let the passenger train pass. It had been at Choudrant 15 or 20 minutes waiting for the east-bound passenger train to pass. It was across the highway; in other words, it blocked up the road which led to the depot. There was a passageway to the depot. When blocked as it was on the day the plaintiff was hurt, one would have to pass un.der the train or between the cars, if he passed over the nearest pathway to the depot.
The freight train in question never stops at Choudrant except to let other trains pass. At times it is uncoupled; at other times it is not It obstructs the highway where not uncoupled.
We are well aware that it is dangerous to climb between the cars of a freight train ■coupled and ready to move, particularly when an engine is attached to the train.
Choudrant is a small place, where there ■■are six business houses and a drug store.
Persons wishing to cross sometimes go through the train; at other times they go •around the engine, or around the caboose at the other end.
The contention of plaintiff is that, if the •engineer just before moving had been looking toward the rear of the train, he could have .seed the three men passing through the train —Kidd first, second the plaintiff, and an•other man.
When plaintiff attempted to pass, and was hurt, the cars were coupled, the engine fastened to the train. There was nothing to .indicate that the train was about to move. Plaintiff complains that no bell was sounded; no notice was given. There was no flagman ■about nor a switchman.
Plaintiff’s foot was^ caught between the freight cars which he passed when the train .passed to take up the slack. The movement in thus taking up the slack was backward about three or four feet. His foot was crushed; there was a laceration on the top of the foot, and there were fractures and contused wounds, which are always very painful. It was not possible for him to walk on his foot for five or six weeks, and then he could walk only by using crutches.
The plaintiff as a witness stated that, in attempting to pass, he had put his suit case on the coupler, and vaulted up, and just as he straddled the coupler the engineer backed the train.
It was stated by witnesses for plaintiff that, if he had passed in front of the engine, instead of between the cars, he would not have had time to board the passenger train.
One of the witnesses for plaintiff testified that he had often passed between two cars; he caught the grab handle on each car, and jumped upon the coupling, and vaulted to the other side, a matter of a second or two.
All the witnesses agree in stating that in any ease it is dangerous to pass between two cars, particularly if they move at the time.
When the slack is bunched, there are about 18 inches between the cars. When the slack is out, the distance between the two cars is about 3 feet, sufficient room to permit a person to pass.
There are safety appliances, grabirons, for trainmen when it is necessary to go between the cars. When a trainman goes between the cars, he notifies the engineer. There are self-couplers, to the end of obviating the necessity of going between the cars.
Even if the cars had been uncoupled, witnesses for defendant testified that they would have been coupled upon the coming of the east-bound passenger train, which was very near.
The people of the town, in going to or returning from the depot, pass over an open space. The depot is on the south side of the three tracks; passengers step from the *449 ground to the platform on the west end of the depot. The main line is the nearest to the depot; further north is a switch at about 500 yards from the depot. The following description by one of the witnesses is taken as correct.
“There are two side tracks north of the main line along the depot that cross this public highway. They are about 10 feet apart. The side track next to the main line is about 50 rail lengths long east and west, and it extends 17 rails long to the west of the depot, and about 15 rails west where the plaintiff was hurt. The freight train was not opened across the highway; it blocked up the road which led to the depot.”
Witnesses familiar with the open highway testified that it was easy to see the three persons, including the plaintiff, as they walked across on the day of the accident. But defendant’s engineer and the fireman testified positively that they did not see them. This assertion is sought to be met by plaintiff by the statement that they did not see these men because “they did hot look back.” Plaintiff says further that the rules require that those in charge of the train “look back” before starting; 'that instead of observing these rules, the employes were intent on going ahead, and were watching the western switch.
There is testimony on the part of the plaintiff to sustain the proposition that, in passing between two freight cars, standing still, it is not difficult to jump across the couplers, that there are two iron rails that run up the end of the car, and that an active, young man can catch these rods, and walk over the couplings, which are about three feet above the ground.
The facts are that the plaintiff, incumbered with his grip, did not attempt to vault over the couplings; on the contrary, he placed it in front of him on one of the crosspieces, and sought to step over while holding onto the grip, which added to the danger in passing between two freight cars.
It is true, as stated, that there is no danger if the cars will only stand still; but if moving there is imminent danger, particularly if one attempts to step on the bulkhead or any part of the coupling.
The proposition of the plaintiff at this point is that the danger only arose at the moment that the train jerked backward. That was, as we think, the dangerous moment which he should have avoided by not attempting to cross as the plaintiff did.
The engineer says that he rang the bell just before taking up the slack. He does not know whether or not he blew the whistle. He did not remember whether he did or not.
[4] Another point urged by plaintiff is that defendant’s conductor was not the one who gave the signal to start; that it was given by the fireman; that this was not in accordance with the rules of the company.
There is a rule upon the subject, copied in the record.
The signal, whether given by one of the employés instead of another, did not justify the plaintiff in attempting to cross between the two cars at that particular time, nor do we think that the uncertainty as to whether the whistle blew or not at that time is of the greatest moment in determining the issues of the case for reasons that we will state later in considering the law of the case.
There is no evidence to support plaintiff’s contention that the engineer or any other employs of the defendant knew at the particular moment of taking up the slack just prior to starting that the plaintiff and the others who passed about the same time were attempting to cross between these two trains. It would have been criminal negligence on the part of defendant’s employés if they had had knowledge, and had none the less backed the train and endangered the life of plaintiff and that of the other two who passed over about the same time.
The second position of plaintiff at this time *451 is that, if these employSs did not know that he and others were crossing between the two cars, they should have known it.
The employes of the defendant road had no reason to assume that plaintiff would take the risk of crossing with a grip in his hand, and attempt to pass over couplings.
We have found no decision in our jurisdiction directly in point upon the subject; but in the highly trustworthy work of Thompson on the Law of Corporations, § 2991, it is said, in substance, that, although it is the duty of the railroad company to have its trains conveniently in hand to allow men to pass to the depot to take passenger trains without exposing themselves to injury, yet a passenger who finds a freight train with steam up (we will add especially as in this instance), and blocking the way, by crawling under or passing through it, without permission or notice to any one in charge of the train, is negligent. The fact is that there was no great distance to repair to the end of the train and go around. There is testimony that it was about 200 feet. Plaintiff had heard the whistle of the incoming passenger train; had he left a minute or two earlier, he would have had time to reach the depot, and to avoid the accident.
Plaintiff, as before mentioned above, is a traveling agent, doubtless familiar with the rules followed in running trains. He must have known that it was about the time that the freight train would move in order to prepare to continue on its way.
Witnesses for plaintiff testified that it is dangerous to climb between cars of a freight train coupled together, and about to move.
R. M. Richmond, a witness for plaintiff, testified that the cars were coupled, and in plain view. If there is an engine attached' to the train, this witness said that it would be dangerous. This witness further said that it would be dangerous at any time to pass between the cars.
Sanderson, another witness for plaintiff, said:
“We all know that it is dangerous if the train is about to move, and that there is danger at any time when there is an engine hitched to the train.”
Another of plaintiff’s witnesses, M. E. Kidd, testified that, if there is an engine coupled to the train, there is danger. Still another witness for plaintiff said that it is always dangerous to go between two cars coupled, and that sometimes a traveling man has to take risks, or else spend a whole day in Choudrant.
We will adá that one should not incur too great a risk to avoid a day’s stay in a village necessarily dull, if one has nothing to do.
The engineer, Watt, witness for defendant, testified that crossing a made-up freight train is dangerous at all times when there is a live engine attached.
Burnside, also another witness for defendant, was equally as certain that it is dangerous to cross over the drawhead between the cars. It is taking desperate chances.
But the burden of plaintiff’s complaint is that defendant is liable because the cars were not uncoupled at the time, and no space was left for those whose business it was to pass.
This view is not sustained by precedent in other jurisdictions. (There is no decision directly upon the subject in our own jurisdiction.) In Andrews v. Central R. R. Co., 86 Ga. 192, 12 S. E. 213, 10 L. R. A. 58, the railroad had placed an impassable obstruction at a crossing. None the less, the court held in substance, if a person attempted to pass between the cars by climbing over the buffers, if injured by a sudden movement of the train, he cannot recover, unless those in charge of the train knew of his attempt to cross, or had notice of his exposure to danger.
This is a correct principle, and it underlies, the decisions upon the subject. The ques *453 tion was considered by tbe Supreme Court of Arkansas. It was said in the opinion, if an engine is attached to a standing train, or is about to be attached to it, and the train is ready to move, and the plaintiff attempted to cross between the cars, and was hurt, the defendant was not liable. The court added, among' statements from testimony most favorable to plaintiff, that, if he east himself upon a known danger, and took a risk known or apparent of falling and hurting himself, he, not the railroad, was the proximate cause. The court said in substance that under the circumstances, as a matter of law, he was guilty of negligence which approximately was the cause of the accident of which he complains.
Taking this case as a whole, from which we have only inserted extracts which barely do justice to the case, it is very similar to the one before us for decision. Curtis v. Railroad Co., 96 Ark. 394, 131 S. W. 947, 34 L. R. A. (N. S.) 466, Ann. Cas. 1912B, 685.
In another case it is held that one attempting to cross a train that has a live engine attached to move the train at any time, but which is standing still on a private crossing, which he is entitled to use, acts at his peril, and the railway company is not liable for the accident to the one who placed himself in peril, unless his danger is discovered in time to prevent the accident.
A similar view is expressed in 33 Cyc. 998, and in Memphis R. R. Co. v. Copeland, 61 Ala. 376.
Learned counsel for plaintiff quotes from the decisions of this court in support of his client’s contention. In the cited case of Bell v. Railroad Co., 132 La. 88, 60 South. 1029, 43 L. R. A. (N. S.) 740, recently decided, it was said “that travelers or others having lawful occasion to go that way” (referring to the way followed by the one who was injured) the company is under obligation to keep it free from danger.
The difference between that case and the one in hand is obvious. In- the cited case the plaintiff, who was injured, was found not at fault, while in the present case it was found that plaintiff assumed risks.
Learned counsel cites three of the decisions of this court: The Downing Case, 104 La. 508, 29 South. 207; Lampkin Case, 105 La. 418, 29 South. 952, 83 Am. St. Rep. 245; and Taylor Case, 123 La. 768, 49 South. 518, in which it was held that the company is liable for its negligence, its want of reasonable care when connected with the injury inflicted. We do 'not find in them the application for which plaintiff contends.
If we were to concede the position taken by plaintiff’s learned counsel, it would lead to the conclusion for which he so ably argues. But the decisions, instead of supporting his views, preclude the possibility of arriving at the conclusion for which he contends.
In the Downing Case, also cited by plaintiff, the company, it was held, owed exceptional diligence. That decision rests upon the broad principle that the injury would not have been suffered had proper diligence been exerted; that not only they were not diligent, but the court found in substance that the accident was due to the negligence of defendant’s employes; and that' it could not excuse its own fault by charging plaintiff with contributory negligence. Not the case here.
The same is true of the other decisions of this court cited by plaintiff.
We will add that, however much a railroad company should avoid stopping its trains across a public road even in a small village, the remedy for the abuse of trains in this respect on the part of passengers is not in passing between the cars nor under nor above the cars.
For reasons stated, the judgment appealed from is affirmed.