GULF, C. & S. F. RY. CO. v. DEES *et al.*

No. 3623.   Opinion Filed October 20, 1914.

(143 Pac. 852.)

1.  **RAILROADS—Injury to Trespasser—Liability of Company.**
It is the general rule that a railroad company is not liable for injuries to a trespasser on its property, in the absence of willfulness, wantonness, or gross negligence.

2.  **SAME—Climbing Between Cars—Contributory Negligence.** To pass under or between the cars of a train, which one knows, or ought to know, is liable to move at any moment, or between cars to one of which a train in full view is about to couple, is an act of gross negligence, unless the person attempting it is assured by some one in authority that it is safe to do so.

3.  **SAME—Crossing Between Cars—Negligence.** There is no obligation resting on a train crew to assume or anticipate that some one will take the risk of crossing between the cars of the train, and unless it can be shown that the crew knew that some one was doing so, and moved the train in spite of that fact, the railroad company will not be liable for one so injured. (Syllabus by Brewer, C.)

*Error from District Court, Garvin County;*

*R. McMillan, Judge.*

Action by Lou Dees and others against the Gulf, Colorado & Santa Fe Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed.

*Cottingham & Bledsoe, Chas. H. Woods,* and *Geo. M. Green,* for plaintiff in error.

*W. N. Lewis* and *Blanton & Andrews,* for defendants in error.

Opinion by BREWER, C.   As plaintiff below, Mrs. Lou Dees sued the railway company for the alleged negligent injury of her husband which resulted in his death.   The injury occurred at the town of Davis, Okla., where the defendant railway runs north and south through the western portion of the town.   Main street runs east and west across the tracks about 25 feet north of the depot, which is situated on the east side of the main line of the road.   The stock pens are situated 300 or 400 feet southwardly from the depot, and on the west side of the main line. Besides the main line of track, there are two or three side tracks west of it and one east of it, which also run east of the depot. From Main street, just north of the depot, to a point a considerable distance south of the stock pens, there is no street crossing over the tracks.   In former years a street extended across the tracks just north of the stock pens, but long prior to this accident this street had been closed by the city council upon the building of a new depot and the rearrangement by the railway of its switching yard.   Shortly prior to his injury the deceased had made arrangements to ship his household effects and live stock to California.   His goods had been put in a box car standing on a side track in the vicinity of Main street.   His live stock was to be loaded from the stock pens into a car which the agent had promised him would be set about noon that day.   There had been some delay in setting out the car, and in the afternoon the deceased was promised that it would be set by a through freight which was expected. The through freight came in from the north on the main line and stopped, with its engine about 150 yards south of the stock pens, and its caboose about flush with the south side of Main street at the depot.   There were two or three strings of box cars standing on the side tracks between the main line, with the through train on it, and the stock pens.   The deceased and a man named Phillips,

being at the stock pens waiting for their car, became impatient and started to the depot to investigate the matter. Instead of going up the west side of the tracks to Main street and crossing over to the depot, they started across the yards, went around some cars on the first track, and, climbing through a string of coupled cars on the second tracks, zigzagged to where they could climb between the cars on the third track, and then undertook to climb between the cars of the through freight on the main line, to which a live engine was coupled. Phillips succeeded in getting through, feeling the cars move just as he cleared from between them. The deceased, who was behind him and on the couplers, had his foot caught by a slight movement of the train, which backed up a few feet to take up the slack preparatory to leaving. Some days after the injury plaintiff's husband died because of it. The railway defended under a general denial of negligence, and upon the theory the deceased was a trespasser, that his position at the time of his injury was unknown to the train crew, and that under these circumstances it owed him no duty. The plaintiff undertook to show that the deceased was not a trespasser, by showing that pedestrians were in the habit of crossing defendant's tracks just north of the stock pens, where the old street had formerly crossed the right of way, and later prevailed upon the court to instruct the jury relative to when a person would be a licensee, and the duty of the defendant in such case. The jury returned a verdict for the plaintiff for $2,000, the amount sued for, and the defendant brings the case here for review, upon numerous assignments of error, which it will be perhaps unnecessary to discuss in detail.

We have studied the facts developed in this case with much care, and we have been unable to find any theory of the law, applied to the facts proven, under which the defendant would be liable. If the defendant had known, at the time it slightly moved its train, that the deceased was passing between its cars, and thus in a position of danger, a very different situation would be presented, involving principles of law not here involved. But this record is barren of such proof. If this had been an accident to a pedestrian at a crossing, and there had been sufficient proof that

pedestrians for a long time had been crossing defendant's tracks at the place, continuously and in large numbers, and that the defendant knew of same, or that the circumstances were such as to impute knowledge, then the company would have been under the duty of looking out for persons, and of reasonably expecting them to be at such place; and the rules applying as between a carrier and a naked trespasser would be modified. But such is not this case. And even if the facts would make a person crossing the tracks what is called a licensee, such implied license would not extend ordinarily to one who attempted to pass over the coupling of cars in a train to which a live engine is attached. In this case the deceased was not injured at the place where it is claimed he had an implied license to cross the tracks. The record shows that he proceeded in a zigzag course from the stock pens, in the direction, but rather diagonally, of the depot, passing over the trains wherever an opening between the cars might offer an opportunity. So, as we see it, the unfortunate victim of this injury was nothing more nor less than a naked trespasser, engaged at the time in doing, without invitation, license, or the knowledge of the company, a most hazardous and perilous thing. In the case of *C., R. I. & P. Ry. Co. v. Stone,* 34 Okla. 369, 125 Pac. 1122, after discussing under what circumstances a railroad would be liable to a trespasser, it is said:

"On the contrary, it is the general rule that the railroad company is not liable to a trespasser on its property, in the absence of any wantonness and willfulness or gross negligence. Under settled rules of public policy, railway companies are not to be made liable for injuries received by trespassers upon their trains, unless the injury is inflicted under circumstances indicating wantonness or willfulness in the servants of the companies. The rule seems to be almost universally recognized and approved, and is in consonance with reason and right. *Richmond & Danville R. Co. v. Burnsed,* 70 Miss. 437, 12 South. 958, 35 Am. St. Rep. 656; *Toledo Ry. Co. v. Brooks,* 81 Ill. 245-292; *Chicago R. v. Michie,* 83 Ill. 427; *Toledo Ry. Co. v. Beggs,* 85 Ill. 80, 28 Am. Rep. 613; *McCauley v. Tenn., etc., Co.,* 93 Ala. 356, 9 South. 611; *Louisville Ry. Co. v. Phillips,* 112 Ind. 59, 13 N. E. 132, 2 Am. St. Rep. 155; *Powers v. Boston & Maine R. Co.,* 153 Mass. 188, 26 N. E. 446;

*Brown et al. v. M., K. & T. Ry. Co.,* 64 Mo. 536; *Duff v. Allegheny Val. R. Co.,* 91 Pa. 458, 36 Am. Rep. 675; *Gardner v. New Haven, etc., Co.,* 51 Conn. 143, 50 Am. Rep. 12."

A multitude of cases are to be found in the books, where the injured person was hurt while crossing over or under cars, and a study of these reported cases discloses a variety of situations and conditions under which the injury occurred; but in an examination of many cases we have found none, resting on substantially similar facts with the one at bar, in which a recovery has been sustained. In many of the cases it will be found that the train was improperly blocking a public crossing. *Andrews v. Central R. Co.,* 86 Ga. 192, 12 S. E. 213, 10 L. R. A. 58, illustrates this class, and the syllabus reads:

"Though a standing railway train be an unauthorized obstruction of a public crossing, a person attempting to pass between the cars by climbing over the platform and bumpers, if injured thereby, in consequence of a sudden movement of the train, cannot recover, unless the engineer, conductor, or some other person having control of the train's movements, knew of his attempt to cross, or had notice of his exposure to danger."

In the instant case it will be observed the train was not blocking a public crossing.

It is difficult, where the situation may have such a diversity of elements entering into it, to lay down any hard and fast rule to govern cases of this character, and we consider it unwise to attempt it; but it seems the text in 23 A. & E. Ency. L. 764, in a general way states the law, as gathered from the decision it cites. It follows:

"To pass under or between the cars of a train, which one knows or ought to know, is liable to move at any moment, or between cars, to one of which a train in full view is about to couple, is an act of gross negligence, unless the person attempting it is assured by some one in authority that it is safe to do so."

We here collect a few of the many cases of injury in crossing over, under, or between cars, illustrating many different situa-

tions, and in each of them recovery was denied: Elliott on Railroads, sec. 1169; Thompson on Negligence, secs. 1674, 1675; *Bailey v. North Carolina R. Co.,* 149 N. C. 169, 62 S. E. 912; *Brackett's Adm'r v. L. & N. R. Co.* (Ky.) 111 S. W. 710; *C. & N. W. R. Co. v. Coss,* 73 Ill. 394; *Smith v. C., R. I. & P. Ry. Co.,* 55 Iowa, 33, 7 N. W. 398; *Hudson v. Wabash W. Ry. Co.,* 101 Mo. 13, 14 S. W. 15; *Memphis & C. R. Co. v. Copeland,* 61 Ala. 376; *Corcoran v. St. L., I. M. & S. R. Co.,* 105 Mo. 399, 16 S. W. 411, 24 Am. St. Rep. 394; *L. S. & M. S. R. v. Pinchin,* 112 Ind. 592, 13 N. E. 677; *Magoon v. B. & M. R. Co.,* 67 Vt. 177, 31 Atl. 156; *Wherry v. Duluth M. & R. Co.,* 64 Minn. 45, 67 N. W. 223; *Rumpel v. Oregon S. L. R. Co.,* 4 Idaho, 13, 35 Pac. 700, 22 L. R. A. 125; *Illinois Cent. R. Co. v. Broughton* (Ky.) 78 S. W. 876; *Freeman v. Huffman* (Tex. Civ. App.) 130 S. W. 195. In many cases it will also be observed that the plaintiff is denied the right to recover on the grounds that his contributory negligence has been so marked or gross that it will be declared as a matter of law. But in such cases, unless the term "contributory negligence" has been loosely used, it will be found that the railway itself has been guilty of negligence in some matter.

The crucial test in this case is, not whether the deceased was guilty of contributory negligence, but, rather, whether the defendant was guilty of negligence. In other words, does the proof show that it failed to perform any duty it owed to the deceased, and because of that failure of duty the injury occurred? Applying this test, we hold, in line with both reason and the authorities, that under the facts of this case, and in the absence of knowledge of the position, and consequent danger and peril, of the deceased, the company had a right to move its train as it did, and was under no duty of anticipating that persons might be crossing between its cars, or of giving notice or warning of the intended movement of the train. It would certainly be very inconvenient for the public, as well as the railway company, if, when stopping a train briefly at a depot for orders, it could not be started again without anticipating that people were crossing between the cars, and, so anticipating, be under the duty of giving to such

persons as might be so situated notice and warning that the train was now about to move. In a very recent case *(Platt v. Vicksburg, S. & P. R. Co.,* 134 La. 444, 64 South. 282, 50 L. R. A. [N. S.] 1012), it is said in the syllabus:

· "There is no obligation resting on a train crew to assume that some one will take ·the risk of crossing between the cars of the train, and unless it can be shown that the crew knew that some one was doing so, and moved the train in spite of that fact, the railroad company will not liable to one so injured."

As we view the case, the evidence, considered most favorably to plaintiff, and without considering that in favor of defendant, fails to show any liability. Therefore the court erred in overruling the demurrer to the evidence interposed by defendant, and the cause should be reversed. .

By the Court: It is so ordered.