131   161
69a 537

# MARY E. LAMBERT *et al.*

## *v.*

## FRANCES LIVINGSTON.

### *Filed at Ottawa January 21, 1890.*

1. JUDICIAL SALE—*reversal of judgment or decree — effect upon the rights of the purchaser.* Where a stranger to the record becomes the purchaser of land at a foreclosure sale, or under a judgment or decree, and has no notice of any error in the proceedings, the subsequent reversal of the judgment or decree will not affect such purchaser's title or rights, provided the court had jurisdiction to render the decree or judgment.

2. A decree for the foreclosure of a deed of trust recited that the trustee was dead, and that the person named in the trust deed as his successor in trust was a party, and served. After sale under this decree to a stranger to the record, the decree was reversed, on the ground no service appeared on the original trustee, and the bill and proofs failed to show the death of such trustee. The final decree showed that the recital in the first decree was true: *Held,* that there was no such want of jurisdiction over the subject matter or the parties as that the reversal of the decree should operate to destroy the rights of a *bona fide* purchaser, not a party to the proceeding.

3. SAME—*notice to purchaser—lis pendens.* By applying to the court in which the cause is pending on error, for the modification of an order for a *supersedeas,* so that it may not interfere with the service of a writ of possession, the purchaser, if not a party to the record, and having no actual notice of errors in the proceeding, does not make himself such a party to a writ of error to reverse the decree under which he claims, as to thereby affect him with notice of error in the decree.

4. The rights of a purchaser at a master's sale, when he is no party to the record, become fixed upon payment of the price and the confirmation of the sale ; and notice of error, to affect him or his assignee, must have been brought home to him before they became interested in the property.

5. SAME—*confirmation of sale—what to be so considered.* On the filing of a report of sale in a suit to foreclose, the court ordered that the report stand confirmed, unless objections thereto were filed in three days. Within that time exceptions were filed seeking only to reach a surplus in the hands of the officer, and they were decided by

the court: *Held,* that the order overruling the objections and exceptions amounted substantially to a confirmation of the sale.

6. SAME—*validity of sale—waiver of objections.* Where a party to a bill to foreclose a deed of trust sets up a claim to a surplus left after satisfying the complainant's demand, he will thereby impliedly waive any objection he may have to the sale, and be estopped from afterward averring there was no valid sale.

7. SAME—*writ of assistance—right of purchaser.* Where a stranger to the record, without notice of any errors or irregularities in the proceedings, becomes the purchaser of land at a foreclosure sale, the pendency of a writ of error to reverse the decree of sale, or even a reversal thereof, will not prevent the purchaser from suing out a writ of possession. He is not bound to await the final decision on error.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Mr. C. M. HARDY, for the appellants:

While writs of assistance are issued pending an appeal or writ of error, this is not a matter of course. Such writ will not be awarded when there is any reasonable prospect that the party in possession may make a successful defense of his possession. *Flowers* v. *Brown,* 21 Ill. 270; 1 Daniell's Ch. Pr. 951.

The decree of sale was void for want of jurisdiction over the trustee. *Walsh* v. *Truesdale,* 1 App. Rep. 126; *Jeneson* v. *Jeneson,* 66 Ill. 259; *Trustees of Schools* v. *Braner,* 71 id. 546; *Hopkins* v. *Roseclare Lead Co.* 72 id. 373; *Gardner* v. *Brown,* 21 Wall. 36; *Feaster* v. *Fleming,* 56 Ill. 457; *Hedges* v. *Mace,* 72 id. 472; Freeman on Void Judicial Sales, secs. 2, 117.

A judicial sale is, in contemplation of law, a sale made *pendente lite,*—a sale in court,—and the court is the vendor. It matters not to the contrary that it is made through the instrumentality of a master, commissioner or other functionary appointed thereto by the court; it is not valid or binding until confirmed by the court. By such confirmation it is judicially

made the act of the court, and is, therefore, a judicial sale. Rorer on Judicial Sales, secs. 1-15; *Young* v. *Keogh*, 11 Ill. 642; *Rawlings* v. *Bailey*, 15 id. 178; *Ayres* v. *Baumgarten*, id. 444; *Bozza* v. *Rowe*, 30 id. 198.

When the master had made the sale and paid over the money realized from it, the complainant in the original bill had no further interest in the litigation, and the duty of securing a confirmation of the sale devolved upon the purchaser or his assignees. Before a purchaser can get a title he must get a report from the master that he approves the sale, and that report then becomes the basis of a motion to the court, by the purchaser, that his purchase may be confirmed. Rorer on Judicial Sales, sec. 7.

The sale not having been ratified and confirmed, the court should not have issued its writ of assistance, because, from an examination of its record, it would have discovered the true rule to be, that "while courts of chancery have an undoubted jurisdiction to award the writ of possession in execution of its decree, this it will not ordinarily do, and never, where there is any reasonable prospect that the party in possession may make a successful defense of his possession."

Mr. FRANCIS LACKNER, and Mr. MARCUS HITCH, for the appellee:

If a judgment or decree is reversed for error, it is a settled principle of the common law, coeval with its existence, that the defendant shall have restitution of the purchase money, and the purchaser shall hold the property sold, unless, indeed, the plaintiff himself be the purchaser, and still holds the title. *Fergus* v. *Woodworth*, 44 Ill. 381; *Voorhees* v. *Jackson*, 10 Pet. 449; *Feaster* v. *Fleming*, 56 Ill. 457; *Hedges* v. *Mace*, 72 id. 472; *Barlow* v. *Standford*, 82 id. 298; *Wadhams* v. *Gay*, 73 id. 422; *McLagan* v. *Brown*, 11 id. 519; *McJilton* v. *Love*, 13 id. 495.

Mr. Justice Magruder delivered the opinion of the Court:

This is an appeal from an order or decree of the Circuit Court of Cook County, awarding a writ of assistance in favor of the appellee to put her in possession of certain premises, theretofore sold under a foreclosure decree, and conveyed to her by Master's deed. The Appellate Court has affirmed the decree of the Circuit Court, and the case is brought here by appeal from the former Court.

On February 25, 1884, Frances Hyers filed her bill in said Circuit Court against Mary L. Lambert, Rudolph Lambert, Adolph Loeb, William Loeb, Francis Lackner, Madison Beal and George C. Christian for the purpose of foreclosing a trust deed, executed by the Lamberts to secure a note for $3500.00 payable to the order of said Frances Hyers. The trust deed was made to Madison Beal, as trustee; and George C. Christian was named therein as successor in trust. The trust deed contained a provision, that, in case of the death of the trustee, Beal, then Christian "is hereby appointed and made successor in trust herein with like power and authority as is hereby vested in said grantee." William Loeb and the Lamberts answered the bill; default was entered against Lackner, Christian and Adolph Loeb. In his answer William Loeb sets up, that he was the trustee in a second trust deed executed by the Lamberts to him to secure an indebtedness of $2000.00, which said second trust deed is admitted to be subject to the trust deed to Beal.

On November 28, 1884, the cause was dismissed as to the defendant Madison Beal, trustee, on motion of complainant's solicitor. On February 24, 1885, a decree of sale was entered beginning with the following words:

"This cause having been brought on this day, to be heard upon the bill of complaint taken as confessed by the defendants, Adolph Loeb, Francis Lackner and George C. Christian, (this cause having heretofore been dismissed as to said de-

fendant Madison Beal, because of his death, he being interested in this suit only by virtue of his being trustee in said trust deed,) and upon the joint and several answers of said Mary Louisa Lambert and Rudolph Lambert, filed herein, and the replication of the complainant thereto, also filed herein; and upon the answer of said William Loeb, filed herein, and the replication of complainant thereto, also filed herein; and upon the proof and exhibits offered and heard in open court; and it appearing that all the parties are properly before the court, and that the court has jurisdiction of the subject matter and of the parties thereto, and the court being fully advised in the premises, doth find," etc.

On June 10, 1885, the property was sold at public auction to one John C. Ender, who was not a party to the suit, for $5600.00. After paying out of the proceeds of sale all costs and expenses and the principal and interest due Hyers, there remained a surplus of $1472.11, which was paid by the master into the hands of the clerk of the court. Ender assigned the certificate of sale issued to him by the master to Frances Livingston, the appellee herein, who was not a party to the suit. There having been no redemption from the sale, a master's deed dated September 22, 1886, was executed and delivered to appellee.

The Lamberts being still in possession of the premises, appellee obtained from the Circuit Court an order for a writ of assistance, and the writ was issued and delivered to the Sheriff on September 27, 1886. Thereupon, on October 5, 1886, the Lamberts, appellants herein, obtained a writ of error from the Appellate Court of the first district for the purpose of reviewing the decree of sale entered in the foreclosure suit, which writ of error was made a supersedeas by order of one of the judges of the Appellate Court. On account of the supersedeas the Sheriff refused to execute the writ of assistance.

On June 28, 1887, the Appellate Court reversed the decree of sale and remanded the cause to the Circuit Court "for such

other and further proceedings as to law and justice shall appertain, and for the purpose of correcting and with directions to correct the error pointed out in the opinion filed herein." The ground, upon which the Appellate Court reversed the decree, as set forth in *Lambert* v. *Hyers*, 22 App. Ct. Rep. 616, was, that the record did not show any service upon Beal, and there were no allegations in the bill, nor proofs in the certificate of evidence, that Beal had died and Christian had accepted the trust as successor. We pass no opinion upon the correctness or incorrectness of this decision.

While the cause was pending in the Appellate Court, the appellee, Frances Livingston, on December 1, 1886, presented her petition to that court praying that the *supersedeas* be quashed so far as it affected her rights, and on December 8, 1886, the defendant in error therein, Frances Hyers, also made a motion to modify the *supersedeas*. The petition and motion were taken under advisement and reserved until the hearing, but no formal disposition was ever made of them, so far as we have been able to discover.

Afterwards in the fall of 1887, the cause was redocketed in the Circuit Court, and, by leave granted, Hyers on November 12, 1887, filed a supplemental bill, reciting all the former proceedings in the Circuit and Appellate courts, substantially as the same are above set forth, with the exception of said petition and motion for the quashing and modification of the *supersedeas*, and also alleging that, after the filing of the original bill and on April 6, 1884, Beal had died, and Christian had assumed and entered upon his duties as successor in trust, as provided in the trust deed.

On January 30, 1888, the Circuit Court rendered a decree, reciting that the cause came on to be heard "upon the testimony heard in open court in support of said supplemental bill and in relation to the matters therein alleged;" and finding that all the allegations of the supplemental bill were true; and decreeing that said original decree should be corrected so

as to show the death of Beal after the filing of the original bill, and before decree, and the assumption of the duties of successor in trust by Christian. The Lamberts took an appeal from this decree to the Appellate Court, and on December 7, 1888, the Appellate Court reversed the decree of January 30, 1888. In its opinion, that Court assigns as its reasons for such reversal that the decree of January 30, 1888, merely corrected the former decree of February 24, 1885, and was not a decree upon the merits, and that the cause should have been wholly reheard and a new decree rendered upon the whole case. We do not wish to be understood as deciding whether the action of the Appellate Court in reversing the decree of January 30, 1888, was correct or erroneous.

On March 8, 1888, a decree was rendered by the Circuit Court of Cook County, reciting that appellee came into court and moved for a writ of assistance to put her in possession of said property and that the appellants appeared at the same time by their solicitor; finding that the appellants were in possession and that due service of the Master's deed, and of the decree of foreclosure, and of demand for possession, had been made upon them; and ordering that a writ of assistance issue in favor of the appellee and against the appellants in accordance with the decree of foreclosure entered on February 24, 1885, for the property therein described.

This latter decree of March 8, 1888, is the decree which has been affirmed by the Appellate Court, and which is now before us by appeal from such judgment of affirmance.

The reversals of the decrees of February 24, 1885, and January 30, 1888, can have no effect upon the rights of appellee. Neither she nor Ender was a party to the foreclosure proceeding. For aught that appears to the contrary, Ender bought the property in good faith at the Master's sale for all that it was worth, and appellee appears to have been a *bona fide* assignee of the certificate of sale, upon which the master's deed was executed to her.

In *Fergus* v. *Woodworth,* 44 Ill. 374, we said: "if a judgment or decree is reversed for error, it is a settled principle of the common law, coeval with its existence, that the defendant shall have restitution of the purchase money, and the purchaser shall hold the property sold. 10 Peters, 473. To this rule there may be an exception, and it is where the plaintiff in the judgment or decree has become the purchaser and still holds the title under his purchase."

In *Hedges et al.* v. *Mace et al.* 72 Ill. 472, we said: "The law is well settled, that where the court has jurisdiction of the subject matter and obtains jurisdiction of the person by service of process, then, although errors may intervene, the title of a purchaser under the decree, who is not a party to the proceeding, will be protected." If a judgment is reversed, the parties are to be restored to their original rights, so far as it can be done without prejudice to third persons. But the rights of third persons are not affected. Their title to property acquired under an erroneous judgment is not affected. (*McLagan* v. *Brown,* 11 Ill. 519; *McJilton* v. *Love,* 13 id. 494; *Stow* v. *Kimball,* 28 id. 108; *Moore* v. *Neil,* 39 id. 256; *Wight* v. *Wallbaum,* 39 id. 554; *Goudy* v. *Hall,* 36 id. 313; *Feaster* v. *Fleming,* 56 id. 457; *Wadhams* v. *Gay,* 73 id. 415, and cases cited.)

It is said, however, that the sale of June 10, 1885, was void on the alleged ground that the court did not have jurisdiction over the trustee, Beal. The foreclosure decree recited upon its face that Beal, the trustee, was dead. Christian, the successor in trust, who succeeded to the title of Beal, was a party defendant and had been served. The findings in the decree of January 30, 1888, show that the recital of the original decree as to Beal's death was true. Ender, the purchaser, had a right to rely upon the correctness of the recital as to the death of the trustee. If that recital had been false, then the decree and sale would not have been binding upon Beal and could not have affected his interests. But we do not think there was any such want of jurisdiction over the subject matter

or the parties, as that the reversal of the decree could operate to destroy the rights of a bona fide purchaser not a party to the proceeding.

Appellants complain that the rights of the purchaser at the master's sale were subject to the confirmation of the report of sale, and that said report was never confirmed, and that the exceptions of the appellants thereto were never overruled, or otherwise passed upon. On June 20, 1885, upon the coming in of the report of sale, the court ordered that the report be "in all things ratified and confirmed without further order herein, unless objections are filed thereto within three days from date," and at the same time it was ordered that the defendants should within five days answer the petition of William Loeb "for the application of the surplus arising from said sale." On June 23, 1885, the Lamberts filed exceptions to the report of sale, but they say therein that they do so, because "they only desire to have all the facts reported to the court as bearing upon the question of the person or persons entitled to the surplus of money shown by said report." On June 26, 1885, the Lamberts filed an answer to Loeb's petition, and in their answer they claim that they "are themselves entitled to have said surplus of money instead of the said * * * Loeb." On June 30, 1885, the court entered an order, reciting that the cause came on to be heard upon Loeb's petition for the surplus and the answer of appellants thereto, and that the court had heard evidence and arguments of counsel; and finding that the owner of the notes secured by the trust deed to Loeb was entitled to the surplus; and decreeing that the clerk pay on demand to William Loeb, trustee, the amount of said surplus being $1472.11.

The position of appellants is, that, as the report was only to be confirmed upon the condition that no objections were filed within three days, and as objections were filed within three days, therefore there was no confirmation of the report. It is true, that there was no order entered, formally overruling

the exceptions and confirming the report, but the order direct-
ing the surplus to be paid to Loeb amounted, under all the
circumstances above detailed, to an order disposing of such
exceptions and confirming the sale. The object of the excep-
tions was to determine the ownership of the surplus. The
appellants themselves laid claim to the surplus and thereby
impliedly waived their objections to the sale. When a party
comes into court and asks that a portion of the proceeds of a
sale be paid to him, he is estopped from asserting that there
was no sale.

Appellants further claim that the writ of assistance should
not have been applied for while the cause was pending in the
Appellate Court upon writ of error to review the decree of
February 24, 1885, or upon appeal to review the decree of
January 30, 1888. If the reversal of the decree cannot affect
the rights of a purchaser not a party to the suit, it is difficult
to understand why he should be obliged to wait until the ques-
tion of reversal is determined before he can institute measures
to get possession. The part of the decree, which orders the
defendants to deliver possession, is for the benefit of the pur-
chaser, and very often operates as an inducement to him to
bid at the sale. *Flowers* v. *Brown*, 21 Ill. 270, has no appli-
cation here; there, the purchaser was the complainant in the
suit, and there was evidence tending to show, that, after the
sale, the purchaser had agreed to give the defendant further
time to pay, and to reconvey the land upon being paid the
balance due on the decree, and that the defendant had paid a
part of such balance. Under such circumstances it was in-
equitable to issue a writ of possession.

It is furthermore insisted, that by filing her petition in the
Appellate Court the appellee became a party to the proceeding
there, and was affected thereby with notice of the errors in the
decree. This position is not tenable. The petition was filed
long after the sale and after the execution of the master's deed,
and was merely an additional step in the effort to obtain an

execution of the writ of assistance. The sheriff had refused to execute the writ because of the supersedeas, and the object of the petition was to get the supersedeas out of the way, so that the sheriff would consent to proceed. The rights of Ender, the assignor of appellee, became fixed upon payment of the purchase money and confirmation of the sale. If notice of errors could affect him and the appellee, it was such notice as was brought home to them before they became interested in the property.

We perceive no error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*