CASE 73—ACTION BY JOHN A. EWING'S ADMINISTRATRIX AGAINST L.
& N. R. R. CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTES-
TATE.—FEB. 11.

# Louisville & N. R. R. Co. v. Ewing's Admr.

### APPEAL FROM OLDHAM CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.     AFFIRMED.

RAILROADS—INJURY TO SERVANT—PROXIMATE CAUSE—CONTRIBUTORY
NEGLIGENCE—QUESTIONS FOR THE JURY.

Held:  1. Where several cars were left on a siding on a down grade,
and on the uncoupling of two cars by the brakeman of a later
train the rest of the cars started of their own weight and in-
jured him, it was a question for the jury whether the negli-
gence of the crew of the earlier train in not properly setting
the brakes of cars left on the siding was the proximate cause
of the injury.

2. Whether a brakeman, in the exercise of reasonable care, before
uncoupling two cars on a siding on a down grade, should have
examined the cars to which they were attached to see if the
brakes were properly set, was a question for the jury.

BENJAMIN D. WARFIELD, FOR APPELLANT.

EDWARD W. HINES, HELM & BRUCE, AND D. H. FRENCH, OF
COUNSEL.

### POINTS AND AUTHORITIES DISCUSSED.

1. The peremptory instruction should have been given, be-
cause no negligence against appellant was established, and for
the further reason that even if there was negligence in the con-
ductor who originally left the cars on the side track, such negli-
gence was not the proximate cause of the accident.  Setter's
Admr. v. City of Maysville, 24 Ky. Law Rep., 828, and cases there
cited; L. & N. R. R. Co. v. Webb, 99 Ky., 332.

2. The burden was on appellee to establish negligence, and
she has failed to do so.  Louisville Gas Co. v. Kaufman, Straus
& Co. &c., 105 Ky., 156-7; L. & N. R. R. Co. v. Wathen, 22 Ky.

Law Rep., 82; Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep., 755.

3. Ewing was guilty of contributory negligence. L. & N. R. R. Co. v. Fox's Admr., 20 Ky. Law Rep., 81; South Covington &c. St. Ry. Co. v. Pelzer, 19 Ky. Law Rep., 88; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; I. C. R. R. Co. v. Dick, 91 Ky., 434; L. & N. R. R. Co. v. Cummins' Admr., 23 Ky. Law Rep., 681; Goodman's Admr. v. L. & N. R. R. Co., decided December 1, 1903; Bush, &c. v. Grant, 22 Ky. Law Rep., 1766.

4. The verdict is not sustained by sufficient evidence. Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep., 755; L. & N. R. R. Co. v. Hall, 24 Ky. Law Rep., 2487; L. & E. M. Co. v. Gilliland, 24 Ky. Law Rep., 2081; L. & N. R. R. Co. v. McGary's Admr., 104 Ky., 509; L. & N. R. R. Co. v. Carter, 23 Ky. Law Rep., 2020.

5. The court erred in permitting Wilsford, Thompson and McEntier to testify as experts.

6. The court erred in permitting certain rules of appellant to be read in evidence. L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep., 1238; L. & N. R. R. Co. v. Logsdon, 24 Ky. Law Rep., 1566.

7. The court erred in giving and refusing instructions.

8. Ewing was not inexperienced. L. & N. R. R. Co. v. Bryant, by &c., 15 Ky. Law Rep., 181.

9. The verdict is excessive, the recovery being limited to compensatory damages. C. & O. Ry. Co. v. Lang's Admr., 100 Ky., 230.

10. In determining whether the verdict is supported by the evidence this court must apply the law as given by the trial court. O. V. Ry. Co. v. Alves, 11 Ky. Law Rep., 811.

B. F. PROCTER, COUNSEL FOR APPELLEE.

MORRIS & MORRIS, AND G. H. HERDMAN, OF COUNSEL.

### SUMMARY AND AUTHORITIES CITED.

1. The court will not review the instructions unless all offered by both parties and all given by the court are in the bill. Warren v. Nash, 67 S. W., 274; L. & N. R. R. Co. v. Finley, 86 Ky., 294 (5 S. W., 753.)

2. The record shows actionable negligence of whole crew that left the cars at LaGrange, and also of station agent, and of conductor Robinson. L. & N. R. R. Co. v. Edmond's Admx., 64 S. W., 727, 23 Ky. R.; Thompson on Negligence, 2 vol. 981; Thompson on Trials, 2 vol., section 1676; K. C. Ry. Co. v. Ryle, 13 Ky. R., 862; L. & N. R. R. Co. v. Foley, 15 R., 17; C. N.

O. & T. P. Ry. Co. v. Roberts, 62 S W., R., 901; N. C. & St. L. Ry. Co. v. Dudgeon, 56 N. E., 798; Beach on Contributory Negligence, sec. 96; Schweinfurth v. C. C. C. & St. L. Ry. Co., 54 N. E., 89; L. & N. R. R. Co. v. Richardson, 66 S. W., 351; Union Pac. R. R. Co. v. Harris, 158 U. S., 326; C. N. O. & T. P. Ry. Co. v. Malay's Admr., 76 S. W., 334; (Judge Hobson.)

3. Was Sexton's deposition competent? L. & N. R. R. Co. v. Steemberger, 70 S. W., 1094, 24 Ky. R., 761.

4. Did decedent Ewing exercise ordinary care? L. & N. R. R. Co. v. Brooks, 7 Ky. R., 112; L. & N. R. R. Co. v. Earle's Admx., 94 Ky., 368, 15 Ky. R., 187; L. & N. R. R. Co. v. Harmon, 64 S. W., 641, 23 Ky. R., 871; Peltier v. R. R. Co., 16 R., 500.

5. Is the verdict excessive? L. & N. R. R. Co. v. Gilliam's Admx., 71 S. W., 863, 24 Ky. R., 1536; L. & N. R. R. Co. v. Brooks, 7 Ky. R., 112; C. & O. Ry. Co. v. Davis, 60 S. W., 14; Railroad v. Moore, 83 Ky., 675; Same v. Mitchell, 87 Ky., 327, 8 S. W., 706.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

John A. Ewing, a brakeman on one of appellant's freight trains, was fatally injured in the following manner: A previous train had some fifteen hours before cut off and left ten or twelve cars on a siding at Lagrange. Of these, three were to be taken out by Ewing's train and put into it, to be carried on. Ewing, as was his duty as brakeman, shifted the switch for the siding, and preceded the engine—which was pushing three cars ahead of it—to the string of cars first mentioned, where he uncoupled the two to be taken out, coupled them to the front of the cars attached to his engine, and gave the signal to back out, which was obeyed. He rode the cars out to the switch, where he dismounted, and threw the switch so as to run the engine and cars forward on the right track. As the cars came forward, being pushed by the engine, he mounted the side ladder on the corner of the front car, signaling to the fireman to

"come ahead." It was then dark. As these cars were being pushed forward they were met, before they had cleared the siding, by the other cars which had been left there, the remainder of the ten or twelve first mentioned. In the collision Ewing was crushed, from which he died. The tracks all had a down grade from the point where the dead cars had been left, toward the point where the collision occurred.

The negligence complained of, and because of which it is charged that Ewing was injured, was in leaving the cars on the siding without their brakes being set so as to prevent their rolling out by gravity and of their own momentum. It is charged, first, that this negligence occurred when the conductor and crew of the train who set those cars in there failed to properly set the brakes on them so as to prevent their rolling out; and, second, that Ewing's conductor was negligent in not seeing personally that the brakes were set on the remaining cars so as to keep them stationary. The defenses are that the injury was caused by Ewing's contributory negligence, and by the negligence of a fellow servant, another brakeman of his crew, named Sexton, who it was charged should have set the brakes, but failed to do it. The court's instructions clearly and in unobjectionable terms submitted to the jury those defenses. It is furthermore contended—and this is the main point made on this appeal—that the negligence, if any, of the crew or conductor who set the cars on the siding, without putting on sufficient brakes, was not the proximate and efficient cause of the injury. Whether Ewing's conductor was negligent in failing to see that the other cars were properly braked was submitted to the jury, as was the negligence of any other servant of the company in that matter, other than the brakeman Sexton. (It was not claimed that any other fellow brakeman had

omitted to do anything which in duty he should have done.)
But the court told the jury, in addition: "It was the duty
of the conductor who left the cars on the side track in the
yards to see that sufficient brakes were set to hold such
cars. He is not required to personally set or test the brakes,
but must use ordinary care in supervising the performance
of such duty." This instruction was based upon a certain
rule of the company's shown in evidence. The form of this
instruction is not questioned in the briefs.

It is urged by appellant that no instruction should have
been given submitting the question of the first conductor's
negligence. This contention is based solely upon the ground
that that negligence, even if found to exist, was not the
proximate cause of the injury. So the question is at last,
was the negligence of the conductor of the other train so
remote as that, as a matter of law, the court should have
instructed the jury that they could not consider it? If
there be doubt as to whether the injury was the result of a
particular act or of another closer connected, or if there be
doubt whether there was or was not an intervening and inde-
pendent agency between the original act and the injury, that
is, where different minds may draw different conclusions from
the fact, the question whether the injury is the proximate
result of the causes complained of, we say unhesitatingly,
should be submitted to the jury for determination. On the
other hand, if the facts be admitted or not in dispute, and
if they show so clearly that reasonable minds could not well
disagree about it, that but for the intervening independent
agency the injury would not have happened, the question is
one of law. That there must be a casual connection between
the negligence complained of and the injury, a natural and
continuous sequence, not dependent upon any new and in-

dependent cause, before a recovery could be allowed, is too well settled to admit of discussion. For appellant it is claimed that although appellant's conductor in charge of the first train, who set in the dead cars, was guilty of negligence in not sufficiently scotching them to prevent their subsequent escape, yet that negligence alone did not and could not have hurt Ewing; that something else was necessary to, and which in fact did, occur, but for which the injury could not have happened. This new agency is said to have been the act of letting off the brakes on the two cars taken out by Ewing, which had doubtless been the sole stay of the whole lot, and of the jar or jolt given the remaining cars by the engine in coupling onto the two, thus disturbing their poise and giving them a momentum. Sometimes it is a very difficult thing to say just what was the proximate cause of a result. It is therefore the rule, in determining such a fact, to leave it to the jury, who from experience and observation in such matters are thought to be best able to satisfactorily solve it.

As to whether the injury to Ewing was the result proximately of the acts of negligence sued for was expressly submitted to the jury in this case. But it is insisted that, on this particular issue, there is no dispute as to the facts; that taking appellee's theory of the cause of the injury, so far as the acts of the first train's crew are concerned, it is a demonstrable proposition, to which the conclusion is irresistibly drawn. that, but for the intervening and independent agency of the action of the engine in jolting the cars (which is not claimed to have been negligent) and of Ewing's loosening the brakes on the two front ones, the original act of negligence in not braking all the cars would have been barren. Aside from Ewing's letting off the brakes,

we are not at all satisfied that the above proposition of fact is made out. It was not made to appear that the disturbing of the cars by the act of coupling the engine to the front two either did in fact, or necessarily would, put the others in motion when the engine detached and took away the two cars. That may or may not have been so. We are satisfied from the facts shown that none of the remaining cars were braked, or at least not sufficiently, and that it was the removal of the restraint imposed by the two cars that caused the others to start. Was the act of Ewing a new and independent cause in the sequence of events from the original negligence of leaving the cars unchocked to the injury? The negligence was in leaving the cars in that unsafe condition. It was continuous. When Ewing came to handle them, their condition, the passive negligence, became active, and proximately and inevitably produced the result, Ewing being situated as he was at the precise moment of collision. If the brakes on the dead cars had been negligently not set, that fact would not and could not have injured the brakeman. But when he, in ignorance of their condition, but relying upon its being all right, came to handle them, his handling, while in one sense a new agency was nevertheless a natural sequence in the probable order of events, and such as should have been anticipated by the person guilty of the original omission. This necessarily must be true in all passive negligence, where the party in the wrong has omitted to do something that he ought to have done. Generally his omission, alone, will be harmless. It is only when others come in contact with the event, relying upon the existence of the thing omitted, that injury will result. To hold that for such acts the negligent person is not responsible, because of the intervention of another agency but for which the injury

would not have happened, would be to strip the law governing negligence of half its application and value.

Whether Ewing should have examined the remaining cars before leaving them, so as to know whether they were safely secured, or whether he had the right to rely upon the presumption that those who placed them there had discharged that duty, was involved necessarily in the question of his contributory negligence submitted to the jury—whether he had acted within that caution which an ordinarily prudent person similarly situated would have observed for his own safety. We can not say as a matter of law that he had not the right to assume that the other servants who had gone before him had done their duties. If every operative in railroad service should be compelled to personally verify the proper discharge of all duties of all other servants and officers who had acted before him, it would be impossible to continue the business with any degree of dispatch. While he must use ordinary care and observation and judgment in keeping himself informed as to conditions of his train and service, he has the right to assume that things not obviously insecure have been properly arranged by those whose duty it was to put them in proper condition.

We see no error in the record. Judgment affirmed, with damages.