## CHICAGO, R. I. & P. RY. CO. v. STONE.

### No. 1598.    Opinion Filed August 20, 1912.

#### (125 Pac. 1120.)

1.  **CARRIERS—Injury to Trespassers—Gross Negligence.** It is gross negligence for a railroad company, in the operation of its trains, to leave a string of freight cars unattended, or not under control, upon a siding or passing track where there is a sufficient grade to permit of the cars, either by gravitation or lack of control, running down such inclined track and onto the main line or track, and there collide with a regular passenger train then due.

    (a) The failure in such case to discharge a manifest duty is not to be excused by the fact that the party injured, himself free from contributory negligence, was a trespasser on the train with which the freight cars collided in escaping from the side track and running out and onto the main line.

    (b) The commission of such gross and wanton negligence is a violation of a manifest duty to the public, trespassers and all, themselves free from contributory negligence, not to turn such power loose without being under control.

2.  **SAME — Findings — Evidence — Judgment.** Evidence examined, and held sufficient to support the findings of fact of the trial court and the judgment entered thereon.

3.  **CARRIERS—Trespassers—Injuries.** In the absence of wanton or gross negligence on the part of the employees of a railroad company, it is not liable for injury to trespassers on its cars or trains.

4.  **SAME—Knowledge of Carrier's Servants.** That a trespasser on a carrier's passenger train was permitted to occupy a position in a coach until the return of the carrier's ticket auditor or the arrival of the conductor without any attempt being made to remove him, and with the knowledge of the auditor that he was a trespasser, during which time he was injured in a wreck due to the gross negligence of the carrier, did not change his status as a trespasser.

(Syllabus by Sharp, C.)

*Error from District Court, Noble County;*
*William M. Bowles, Judge.*

Action by Jesse Stone, by his next friend, James H. Stone, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error.    Affirmed.

C. O. Blake, H. B. Low, R. J. Roberts, and W. H. Moore, for plaintiff in error.

Moss, Turner & McInnis, for defendant in error.

Opinion by SHARP, C. It is admitted that defendant in error, at the time of his injury, was a trespasser upon a regular passenger train of defendant company. He neither had a ticket nor money with which to pay his fare from Banner to Oklahoma City, his point of destination. The accident occurred in the west end of the railroad yards at Yukon, the first station beyond where defendant in error surreptitiously took passage, and but a few miles (presumably the first stop) from where he entered the train. The passenger train on which he was riding left El Reno about 30 minutes late, and was running at the rate of about 30 miles an hour when approaching the west end of the passing track at Yukon station. On this passing track were some twelve or fifteen freight cars, which in some way, not clearly shown, were permitted to run downgrade to the switch block and onto the main track and collide with the incoming, regular passenger train from the west, on which defendant in error was riding. The engineer of the passenger train did not discover that the freight cars on the siding or passing track were in motion until the engine was within a few feet of them, and until too late to prevent a collision. These loose freight cars struck the passenger car on which defendant in error was riding, thereby causing the injury complained of. By agreement of counsel a jury was waived, and all issues of fact and law were submitted to the court. The findings of fact made by the court included that defendant in error was a trespasser; and when he suffered the damage complained of that the east-bound passenger train, upon which he was riding, was running at the rate of 30 miles an hour, and that on the side track within the town or village of Yukon was a string of freight cars, which had been left there, and which were moving toward the west; that the engineer discovered these moving cars when within about twenty feet of them, and applied the air brakes and endeavored to stop the train, but was unable to do so before the collision; that the

railroad company was guilty of wanton negligence in leaving and abandoning the freight cars on the switch track in a moving condition, owing to the condition of the track and the grade, and with knowledge that they would likely run onto the main line and wreck the passenger train then due, and which facts were well known to the agents and employees of the defendant; that it was guilty of willful negligence and wanton disregard of human life to leave freight cars on a side track where, if put in motion, they would be liable to run onto the main line track at the time that the passenger train was due.

Three propositions are discussed by counsel for plaintiff in error in their brief: First. That the only duty that the railway company or its employees owe to a trespasser upon one of its trains is not to wantonly or willfully injure him. Second. Trespassers cannot invoke the rule of *res ipsa loquitur,* and that the verdict cannot be sustained, in an action brought by a trespasser, upon presumptions of negligence under any circumstance. Third. That neither the allegations nor the evidence support the finding of willful and wanton negligence. The latter two points will be first considered under one head.

The petition charged that the wreck and derailment of the coach on which the plaintiff was riding was caused by the employees of defendant negligently and knowingly permitting certain freight cars on a switch and side track of defendant's line of railroad to become unmanageable and beyond the control of the said employees, and to move and run over and along the side track and switch and onto the roadbed upon which the passenger train was running, and in the opposite direction to which the passenger train was being operated, and that by reason of the failure of the employees of defendant to stop the said passenger train before it had arrived at the place and point where the said switch and side track intersected the main line the collision and injury occurred; that by the exercise of reasonable care or diligence the employees of defendant operating said passenger train could have seen the said freight cars coming toward the main line upon which the said passenger train was being operated, and by such use of reasonable care would have known that a collision

would have resulted, but that, notwithstanding, said employees wantonly, recklessly, and indifferently attempted to operate the passenger train at such a high rate of speed as that it would pass by the point where the switch and side track intersected the main line, thereby causing the derailment and accident complained of.

We do not deem it necessary to consider the testimony as to how the string of freight cars moved from the passing track onto the main line. The fact that they did so move is shown, both by the testimony of Roy L. Brown for the plaintiff and F. J. Hasler, the engineer on the passenger train, and is not disputed.

In *Enid City Railway Company v. Webber,* 32 Okla. 180, 121 Pac. 235, this court, speaking through Rosser, C., said:

"The first question to be decided is whether there is any proof of negligence. That there was such proof is clear. It is the duty of a railroad or street railway company to confine or fasten its cars, so they cannot be driven along its tracks by wind-storms or other irresponsible forces. *Brown v. Pontchartrain R. Co.,* 8 Rob. (La.) 45; *Battle v. W. & W. R. Co.,* 66 N. C. 343; *So. Pac. Ry. Co. v. Lafferty,* 57 Fed. 536 [6 C. C. A. 474]; *Continental Trust Co. v. Toledo, etc., R. Co.,* 87 Fed. 133 [32 C. C. A. 44]; *L. & N. R. Co. v. Erving,* 117 Ky. 625 [78 S. W. 460]."

The court there further said:

"The very fact that the cars had drifted upon the main line raised a presumption of negligence upon the part of the company, unless there were other circumstances in the case changing that presumption."

There the cars had been driven out on the main line by a storm or other act which might have tended to excuse the negligent act. On the contrary, it here appears that from the switch, where the accident occurred, up to the station is, to use the language of the engineer, a pretty steep upgrade. To leave a string of freight cars on such siding, not under control, and where the same, either by momentum or gravitation, might run downgrade to where the siding connected with the main line and then upon the said main line, even though in the daytime, and at a time when a regular passenger train was due, would be proof to show such gross and wanton negligence and recklessness as would manifest a disregard of all consequences.

The burden was on the plaintiff to prove the defendant's negligence; but this burden was well borne by him when he proved the presence of the freight cars belonging to it, or under its control, running from the siding onto the main line in a manner such as could not be avoided by the exercise of due and reasonable care on the part of the passenger engineer. In *Webster v. Rome, etc., R. Co.*, 115 N. Y. 114, 21 N. E. 725, affirming 40 Hun, 161, it was said:

"It is quite true that the burden was upon the plaintiff to establish the defendant's negligence. But this burden was well borne by him when he proved the presence of the car belonging to it upon the track in the way of its passenger trains. The case thus made by the plaintiff could be met by the defendant by evidence tending to show that the car came upon the main track without its fault; and then, upon all the evidence, it was incumbent upon the plaintiff to satisfy the jury that there was negligence fairly attributable to the defendant."

The rule of *res ipsa loquitur* is not, therefore, involved.

We think that the allegations in the petition were sufficiently broad and the proof adequate to support the findings of the trial court. The rule, therefore, announced by this court in *St. Louis & S. F. R. Co. v. Gosnell*, 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892, and in *Patten v. Texas & Pac. Ry. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, and *Northern Pac. Ry. Co. v. Adams*, 192 U. S. 448, 24 Sup. Ct. 408, 48 L. Ed. 513, can have no application, where it appears from the undisputed testimony that the railroad company was guilty of gross and wanton negligence, which was the proximate cause of the accident.

The question then recurs to the proposition of the liability of plaintiff in error; defendant in error at the time of the accident being admittedly a trespasser. The question is one not free from difficulty, and, under a state of facts such as here presented, has never been before this court. Railroad companies are bound to exercise their dangerous business with due care to avoid injury to others; and when they fail to do so they are liable for damages, even to a trespasser, who has not been guilty of contributory negligence. White, Personal Injuries on Railroads, sec. 1075. A reckless disregard of consequences may be

so great as to imply a willingness to inflict an injury, such as to entitle a trespasser to recover, although there is no actual intent to harm him. Id. sec. 1078. On the contrary, it is the general rule that the railroad company is not liable to a trespasser on its property, in the absence of any wantonness and willfulness or gross negligence. Under settled rules of public policy, railway companies are not to be made liable for injuries received by trespassers upon their trains, unless the injury is inflicted under circumstances indicating wantonness or willfulness in the servants of the companies. The rule seems to be almost universally recognized and approved, and is in consonance with reason and right. *Richmond & Danville R. Co. v. Burnsed,* 70 Miss. 437, 12 South. 958, 35 Am. St. Rep. 656; *Toledo Ry. Co. v. Brooks,* 81 Ill. 245-292; *Chicago R. v. Michie,* 83 Ill. 427; *Toledo Ry. Co. v. Beggs,* 85 Ill. 80, 28 Am. Rep. 613; *McCouley v. Tenn., etc., Co.,* 93 Ala. 356, 9 South. 611; *Louisville Ry. Co. v. Phillips,* 112 Ind. 59, 13 N. E. 132, 2 Am. St. Rep. 155; *Powers v. Boston & Maine R.,* 153 Mass. 188, 26 N. E. 446; *Brown et al. v. M., K. & T. Ry. Co.,* 64 Mo. 536; *Duff v. Allegheny Val. R. Co.,* 91 Pa. 458, 36 Am. Rep. 675; *Garner v. New Haven, etc., Co.,* 51 Conn. 143, 50 Am. Rep. 12.

The fact that defendant in error was in the doorway of the coach where the passengers were standing on a crowded train is not charged as an act of contributory negligence; and the many reported cases, wherein the question of the trespasser's dangerous position is involved, will be of little aid to us in determining the question here presented. The presence of Stone on the train in the coach was known, and his position is not complained of as being one of greater danger than that of the other passengers. No attempt to remove him was made, and for the moment he was allowed to occupy his position in the coach until the return of the auditor or the arrival of the conductor. While there are authorities to the contrary, we adhere to the position that this fact did not change his status, which remained that of a trespasser, though with knowledge and by sufferance of the employees of the plaintiff in error.

In *East St. Louis, etc., Ry. Co. v. O'Hara,* 150 Ill. 580, 595, 37 N. E. 917-919, it is said:

"If it be true, as the evidence tends to show, that the defendant's servants, at the time plaintiff was injured, were running their engine in the dark without a headlight or a bell ringing, and at a high and dangerous rate of speed, along a much-frequented street, and where many persons were likely to be passing on their way to the ferry landing or otherwise, such acts would be liable to the construction of being in wanton and willful disregard of the rights and safety of the public generally, so as to amount in law to wanton and willful negligence; and it was not necessary, in order to raise an inference of such negligence, to prove that the defendant's servants were actuated by ill will directed specially towards the plaintiff, or to have known that he was in such position as to be likely to be injured."

In *Illinois Central R. Co. v. Leiner,* 202 Ill. 624, 67 N. E. 398, 95 Am. St. Rep. 266, the court, in referring to an instruction given in the trial court, said:

"Certainly, in the language of the instruction asked by appellant and given for it by the trial court, the servants of appellant, who were in control of these trains which collided, 'were at the time acting in such a manner as shows that they had an utter disregard for the safety and lives of other persons.'"

In *Lake Shore & Michigan Southern Ry. Co. v. Bodemer,* 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, the facts were that the train which committed the injury was traveling at the unusual speed of 35 or 40 miles an hour in the crowded city of Chicago, over street crossings, upon unguarded tracks so connected with the public street, and so apparently a continuation of a public street, as to be regarded by ordinary citizens as to be located in a public street, along a portion of the said tracks where persons were known to be passing and crossing every day, in conceded violation of a city ordinance as to speed, and without warning of the approach of the train by the ringing of a bell. It was said by the court:

"This conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of willfulness."

In *Enright v. Pittsburg Junction R. Co.,* 198 Pa. 166, 47 Atl. 938, 53 L. R. A. 330, 82 Am. St. Rep. 795, it is said in the syllabus:

"A railroad company owes the duty of ordinary care to any person of any age who enters upon one of its trains as a trespasser. This is especially true of children of tender years."

There the injured party was a boy ten years of age, but it will be noted that the court did not confine the rule to those of tender age.

In *Patton v. East Tenn., V. & G. R. Co.,* 89 Tenn. 370, 15 S. W. 919, 12 L. R. A. 184, the plaintiff was a trespasser upon the track of the railroad. The court, in quoting from a former opinion, said:

"The mere fact that a party is a trespasser will not prevent him from recovering for injuries negligently inflicted by another, which might have been averted by ordinary and proper prudence on the part of the latter."

There the death was occasioned by the fact that deceased, who had been walking along the railway track, stepped aside to allow a train coming from the rear to pass, and then stepped back on the track, and was run over by a detached portion of the train that had broken loose from the front part. The opinion is by Lurton, J., now a member of the Supreme Court of the United States, and is an able one; and the principle announced is in entire harmony with the theory upon which plaintiff below recovered judgment.

By section 2941, Comp. Laws 1909, gross negligence is defined as the want of slight care and diligence. By the exercise of such degree of care, the collision and consequent injury would not have happened; and the failure to employ the required degree of care and diligence to those on board the incoming and then due passenger train, manifested a reckless disregard of duty, not only toward those to whom the carrier was under a legal duty, but to the public in general.

In *Conley v. Cincinnati, etc., Ry. Co.,* 89 Ky. 402, 12 S. W. 764, the Court of Appeals of the state of Kentucky said in the syllabus:

"In an action against a railroad company for the negligent killing of plaintiff's intestate, there was evidence that, as defendant's train was coming towards a small town, the houses of which were on either side of the track, and while some distance from the depot, part of the train was detached, the engine and some of the cars running on ahead and passing the depot, while the detached portion was allowed to come on more slowly down the grade, with no lights in front, no bell or other signal to announce its approach, and no one to look out for persons on the track. The night was dark, and plaintiff's intestate, after having seen the engine with cars attached to it pass by, started across the track, though not at a public crossing, and was run over by the rear portion of the train and killed. *Held*, that the detaching of part of the train and allowing it to run into the town in such a manner was such a departure from defendant's duty to the public as to entitle plaintiff to recover, though his intestate was a technical trespasser."

There the company had turned its rear cars loose, unlighted in front, and therefore not under control, so far, at least, as to render any assistance, the night being dark, in case of collision, to any person that might be on the track. The cars being separated from the engine, their approach would be, at least as compared with the ordinary movements of the train, almost noiseless, not likely to be heard or noticed; also on a dark night, and in the absence of a light to arrest the attention, their approach would not ordinarily be discovered until too late to get out of the way. The case is a particularly strong one. The court further said:

"Humanity positively forbids the owner of property that is dangerous to human life and safety to knowingly turn such property loose, even upon his own ground, where it will do mischief even to a technical trespasser. Such conduct is regarded as utterly at war with the principles of humanity, and as smacking of savagery. That the party hurt was a mere trespasser and, otherwise than in this legal aspect, perfectly innocent and harmless does not excuse the person that injured him by means manifestly injurious to human life and safety. By being technically a trespasser, he does not forfeit all right to protection."

Here is an agency possessing most destructive power, which, contrary to manifest duty, is either turned loose, or stationed so that by its own power it may become loose, to run down the grade and collide with a train heavily freighted with human be-

ings, as shown by the testimony. As was said by the court in the above case:

"Such conduct is a violation of a manifest duty to the public, trespassers and all, not to turn such a power loose."

In *C., B. & Q. R. Co. v. Mehlsack,* 131 Ill. 161, 22 N. E. 812, 19 Am. St. Rep. 17, it is said, speaking with reference to trespassers:

"But as to the former, his duty rests merely upon grounds of general humanity and respect for the rights of others, and requires him to so perform the transportation service as not wantonly or carelessly to be an aggressor towards third persons, whether such persons are on or off the vehicle."

The rule that a railroad company must exercise ordinary care and caution commensurate with the risk of accidents, in operating its trains or cars at places where persons, although trespassers or mere licensees, are known or may be expected to be on the tracks, as in towns and cities, and for a failure to exercise such care they are thereby rendered liable, except where contributory negligence is shown, cannot be distinguished in principle from the instant case. Indeed, if any distinction is to be made, the greater reason would seem to exist against allowing loose, uncontrolled cars to run upon the tracks under circumstances such as shown by the testimony in this case. In *Kansas Pac. Ry. Co. v. Pointer,* 14 Kan. 38, in an opinion by Brewer, J., it was held that:

"Where a person has been run over by a railroad train and injured, in an action for damages therefor, a finding that the injury was caused by the gross negligence of the company will not be set aside, when it appears that he was run over by a train, consisting of a locomotive, tender, one baggage and two passenger cars, which was started backward over a public crossing, in a populous city, with the brake on the engine out of repair and useless, with no brakeman at the other brakes, with no flagman or other person at the rear of the train, or at the crossing, to warn persons of their danger, and no one on the train, except three persons, who were all on the locomotive, without the blowing of any whistle, though with the ringing of a bell, and along a track which from the locomotive could not be seen for a distance of from 40 to 50 feet from the rear of the train."

*Mason v. Mo. Pac. R. Co.*, 27 Kan. 83, 41 Am. Rep. 405; *Whitehead v. I. M. & S. Ry. Co.*, 99 Mo. 263, 11 S. W. 751; *Union Pac. Ry. Co. v. McDonald*, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; 33 Cyc. 780 *et seq.*

The cases cited, and numerous others of similar import, establish, we think, the rule applicable where accidents result to trespassers either on the track, train, or cars of the railway company, and there is but little in the authorities cited in the brief of plaintiff in error which tends to establish a different rule, when the facts shown by the record here are kept in mind.

We feel that the judgment of the trial court should not be disturbed. The testimony sufficiently showed gross and wanton negligence on the part of the railway company, acting through its employees, in leaving the freight cars uncontrolled on the siding at Yukon. Having so determined, even though defendant in error be a trespasser, he was entitled to recover for the injuries sustained.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.