## VANDERSLICE, Adm'x, v. DAVIS, Director General R. R.

No. 15415—Opinion Filed Nov. 24, 1925.

Rehearing Denied July 20, 1926.

1. **Railroads — Care for Bystanders in Movement of Cars in Railway Yards— Warning of Approach.**

It is not a duty required by statutory law that the agents and servants of a railway company, defendant, in moving or causing to be moved, the cars that collide with other cars and cause the death of a person, should blow the whistle of the engine or ring the bell of the engine or give notice to persons close to said cars that said cars were to be moved, where the place of the accident was on the private grounds of the defendant and not at a public crossing or at a place where deceased had a right to be.

2. **Negligence—"Licensee."**

To entitle one to be upon the premises or property of another, it must be shown that he is there by the permission or authority of the owner or his authorized agent.

3. **Railroads—Duty of Care for Trespassers in Switch Yard.**

A railroad company is not under obligation, in moving its engine and cars in its own switch yard, to take special precaution or give special warnings to avoid injuring any unauthorized person who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered.

4. **Same—Contributory Negligence—Passing Between Cars Likely to Move.**

To pass under or between cars of a train which one knows, or ought to know, is liable to move at any minute, or between cars to one of which a train in full view is about to couple, is an act of gross negligence, unless the person attempting it is assured by some one in authority that it is safe to do so.

5. **Same—Nonliability of Railroad for Injuries.**

There is no obligation resting on a train crew to assume or anticipate that some one will take the risk of crossing between the cars of the train, and unless it can be shown that the crew knew that some one was doing so, and moved the train in spite of that fact, the railroad company will not be liable for one so injured.

6. **Negligence—Contributory Negligence — Proper Instructions.**

While it is well established by the decisions of this court that the trial court should not instruct the jury that if a certain state of facts is found to exist such facts constitute contributory negligence and the plaintiff cannot recover, it is nevertheless the duty of the trial court to instruct the jury, upon request being made, what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence.

7. **Trial—Instructions—Assumption of Fact Uncontroverted.**

Where a material fact is conclusively shown by undisputed evidence, then the giv-

ing of an instruction which assumes that such fact has been established, is not error sufficient to justify a reversal of the judgment.

(Syllabus by Thompson, C.)

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by Nora Vanderslice, administratrix of the estate of E. M. Vanderslice, deceased, against James C. Davis, Director General in control of the Chicago, Rock Island & Pacific Railway Company, for damages. Judgment for defendant. Plaintiff brings error. Affirmed.

Ledbetter, Stuart, Bell & Ledbetter, and Mason & Honnold, for plaintiff in error.

C. O. Blake, A. T. Boys, W. R. Bleakmore, and W. F. Collins, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Oklahoma county by Nora Vanderslice, administratrix of the estate of E. M. Vanderslice, deceased, plaintiff in error, plaintiff below, against James C. Davis, as Director General and Agent appointed under section 206 (a) of the Transportation Act of 1920 and for the Chicago, Rock Island & Pacific Railway Company, defendant in error, defendant below, to recover the sum of $250,000 damages on account of the death of her husband, E. M. Vanderslice, which was alleged to have been the result of the negligence and carelessness of the agents, servants, and employes of the Chicago, Rock Island, & Pacific Railway Company, which was, at the time of his death, under the control of, operated by, and directed by the Director General of Railroads.

The parties will be referred to as plaintiff and defendant, as they appeared in the lower court.

The defendant answered by way of general denial, admitting only that the property of the Chicago, Rock Island & Pacific Railway Company was in the possession of, being directed by, and under control of the government of the United States.

The cause was tried to a court and jury. The only evidence introduced on part of the defendant was a map identified and introduced during the cross-examination of plaintiff's witness, showing the location of the railway yard, tracks, and the streets of Oklahoma City, the viaduct and buildings, mentioned in the testimony on part of the plaintiff. At the close of all the evidence the defendant demurred to the sufficiency of the evidence to sustain the allegations of the plaintiff's petition, which demurrer was overruled, and the defendant excepted. The defendant asked for an instructed verdict, which was refused, and exceptions reserved.

The jury, after being instructed by the court, returned a general verdict against the plaintiff and in favor of the defendant.

Motion for new trial was filed by the plaintiff, which was overruled by the court, and exception reserved by the plaintiff. The court then rendered its judgment upon the verdict of the jury against the plaintiff and in favor of the defendant, and the cause comes regularly upon appeal by plaintiff to this court for review.

Attorneys for plaintiff assign 26 grounds of error, but content themselves in presenting argument in their brief under four separate heads, which are as follows:

"(1) The district court of Oklahoma county erred in giving to the jury the ninth section of the charge to the jury. (2) The district court of Oklahoma county erred in giving to the jury the tenth section of his charge. (3) The district court of Oklahoma county erred in giving to the jury the eleventh section of his charge. (4) The district court of Oklahoma county erred in refusing to give to the jury the requested instruction of the plaintiff."

The instructions are set out in full and will be discussed hereafter in the order in which they appear.

The opinion, heretofore filed and approved by this court, was withdrawn at the request of the plaintiff for the purpose of hearing oral argument of counsel. The oral hearing was had on the 9th day of November, 1925, and after full consideration of the oral argument, the briefs heretofore filed in this case and additional authority cited by plaintiff we are still of the opinion that the judgment of the lower court should be affirmed.

At the outset of this case it will be observed that all of the evidence introduced in the case, except the map, was the evidence given by the plaintiff's witnesses, and the only eyewitnesses to the accident were A. H. Mathews and W. L. Bradford, business associates of E. M. Vanderslice, deceased. The evidence discloses that the accident occurred in the yards of the Rock Island Railway Company, where there were six tracks, at a point about 40 feet north of Main street in Oklahoma City, and between a block and a half and two blocks east of a viaduct located on what is known as Walnut street, where there is no public crossing or any evidence of a pathway or that it had ever been used by persons traveling across the tracks,

except that some negroes had, at one time, been seen by one of the witnesses crossing the tracks in this vicinity; that there was a public crossing immediately east of the viaduct, about a block and a half west of the place of the accident; that the deceased, E. M. Vanderslice, was engaged in some kind of road construction, in or near Tulsa, and in need of certain machinery; that, on the day on which he received the injury resulting in his death, in company with Mathews and Bradford, he went to the highway department at its office in the State Capitol in order to borrow certain supplies and machinery, which he desired to use, and he was advised by some one in the highway department that it had recently purchased a hoist, which was, at that time, in a car in the yards of the Rock Island Railway Company in Oklahoma City, and that if said hoist would answer his purpose, the highway department would loan it to him and he could have it rebilled and shipped to Tulsa; that he went to the freight office, or depot, of the C., R. I. & P. Railway Company and there inquired of Claude W. Guinn, who, it developed in the testimony, was a rate clerk of the said railway company, of the whereabouts or location of the car containing said hoist; that the rate clerk got the information from some one else in the office and he then advised Vanderslice as to the number and location of the car which contained the hoist, and gave him a slip of paper and told him he could go to Main street and turn across the tracks just east of the viaduct, where, the evidence shows, the only public crossing was located; that the deceased, with Bradford and Mathews, got in a Ford sedan and proceeded to the crossing east of the viaduct, which was blocked with a string of cars, and they then drove further east about a block and a half and turned around and drove back in the direction of the viaduct, where they found an opening, five to eight feet wide, between the cars standing on track 46; that they parked their car and got out and proceeded about 40 feet north of the street to this opening, through which Mathews passed, but when Vanderslice was passing through, the cars were shoved together suddenly, catching Vanderslice between the bumpers and injuring him to such an extent that he died shortly thereafter; that there were no officers, agents, or employes of the railway company in sight at the time; that no one of the parties who saw the accident saw the engine attached to the cars; that there was a curve to the east near this point; that none of the employes of the railway

company in charge of the yards or in charge of the engine or cars in the yards had any knowledge of the presence of Vanderslice and his two associates in the yards at the time or the place of the accident, and no signal or warning of the movement of the cars was given. Some of the witnesses of plaintiff testified that this track was used as a team track, and others said it was a holding track where cars were collected together to be transferred to the east yard, and that track 46 was used for a hold track to line the cars up. The evidence is clear that the deceased, Vanderslice, was neither a consignor nor a consignee of the hoist in question, but that he was there for the sole and only purpose of examining the hoist to see if he could use the same in his construction work, and that the railway company and none of its officers knew the purposes of his inquiry as to the location of the car containing said hoist.

Upon these facts the cause was submitted to the jury and the jury returned its verdict in favor of the defendant, and if there be no error of law in the instructions of the court the verdict of the jury and the judgment of the lower court thereon must be and should be affirmed.

The first ground of complaint is that the court erred in giving to the jury the following instruction:

"You are further instructed that where the deceased's presence was unknown by the operating crew, that the employes of the defendant were not required to blow a whistle, or ring a bell, or to give other warnings to the deceased of any danger in crossing the track at the place where the accident occurred, as the place of the accident was on private grounds of the defendant and was not a public crossing."

Attorneys for plaintiff contend that the effect of this instruction was to tell the jury that unless the operating crew knew of the presence of the deceased, defendant's employes were not required to give any warning of danger, either by whistle, bell, or otherwise, and that said instruction was virtually a peremptory instruction to find for the defendant. We cannot agree with the contention that this was error, for the reason that we find that the attorneys for plaintiff requested the court to give the instruction in part which is as follows:

"That it was not a duty required by statutory law that the agents and servants of the defendant in moving, or causing to be moved, the cars that collided with other cars and caused the death of plaintiff, should blow the whistle of the engine or ring the

bell of the engine or give notice to persons close to said cars that said cars were to be moved."

But the plaintiff asked the court in this connection to charge the jury that it could take into consideration whether such warning was given in connection with other evidence in the case to determine whether or not such agents or servants were guilty of negligence or the want of ordinary care, which, in effect, was an admission of the correctness of the main part of the instruction, complained of, but, in the same instruction, the court gave the additional reason why the warning was unnecessary as being that the accident occurred on the private grounds of the defendant and not at a public crossing. The evidence is undisputed and is conclusive that the accident occurred in the yards of the defendant and that there was no pathway, sidewalk, or crossing of any kind or character used by the public to cross defendant's tracks at or near the place where the accident occurred. The case of St. L.-S. F. Ry. Co. v. Rundell, 108 Okla. 132, 235 Pac. 491, does not apply, as, in that case, the accident occurred at a public crossing. The evidence is also conclusive, in our view of it, that neither the engineer nor the train crew, which was switching the cars, nor the yardmaster, nor anyone who had authority or control of defendant's yards, knew of the presence of the deceased, nor is there any proven fact, under the record, sufficient to advise the engineer, train crew, or employes of the defendant, or from which they could expect that anyone should be in defendant's yards, crossing its tracks between cars at the time and at the place of the accident.

Under the facts in this case the deceased's presence at the place the accident occurred was in the pursuit of his own business to determine from an examination whether he desired a loan from the highway department of a hoist which had been shipped to said department as consignee; that he consulted no one in authority on part of the defendant about the location of the car, containing said hoist, and got no permission from any one with authority to go into the yards of defendant, nor did he make known to any one connected with the defendant what his purposes were. Then, under such circumstances, it cannot be said, as contended by attorneys for plaintiff, that he was there on business mutually beneficial to himself and the railway company.

There is a wide distinction to be drawn between the many cases cited and quoted from by counsel for plaintiff and the instant

case. The rule as to public crossings, where it is the duty of defendant's employes to anticipate that persons may be passing over the crossings, or customary passageways, cannot apply and it is unlike the cases cited where a person has property in the yards and on the cars of the railway company where he is a consignor or a consignee and where he is looking after his property when the injury occurred. It is also unlike the cases cited where a friend of a passenger on the train, or one who has business with such passenger, goes to the depot to meet the train and is injured by the negligence of the railroad company, or its employes, or where one goes to post a letter in the mail, and it is also unlike the case cited where a crossing had been blocked for an unreasonable length of time in violation of an ordinance of a city, and a person undertaking to go around the train was injured by the train starting more rapidly than was authorized under another ordinance, for the reason that there is an entire lack of evidence that the regular public crossing of the railroad in this case had been blocked for any unreasonable time or that the blocking of the crossing or the movement of the train was in violation of any state law or city ordinance, and it is unlike the cases cited which hold that there is negligence on part of the railway company to make flying switches where it throws cars into and across streets or crossings used by the public without notice. We find no well considered case which holds that it was negligence on part of the railway company to switch its cars in its own yards without notice, except where it is made to appear that the company, or its employes, know, or have good reason to believe, that some person is in some place in the yard where he is liable to be injured thereby. An examination of the authorities cited by attorneys for plaintiff shows a state of facts to exist in those cases that cannot be reconciled with the facts disclosed here. Then, having found that the deceased was not an invitee, that he was not killed at a public crossing, or at a place used by the public, and was not a consignor or a consignee of any shipment in the defendant's yards, and was not present in the yards with the consent or knowledge, express or implied, of any person in charge of the yards, or who had authority to grant permission to go into the yards, it is our opinion that the authorities cited by plaintiff in support of this proposition do not and cannot apply in this case.

In the case of Texas, O. & E. Ry. Co. v. McCarroll, 80 Okla. 282, 195 Pac. 139, in an

opinion by Justice Ramsey, this court said:

"To make one a licensee upon the premises or property of another, it must be shown that he is there by permission or authority of the owner, or his authorized agent."

In the case of Louisville & N. R. Co. v. Hocker (Ky.) 64 S. W. 638, the court said:

"A railroad company owes to unauthorized persons in its switch yards no duty except to exercise ordinary care to avoid injury to them after their peril is discovered."

In the body of the opinion the court lays down this rule:

"The law is well settled both in this state and elsewhere, that a railroad company is not under obligation, in moving its engines and cars in its own switch yard, to take special precautions or give special warnings to avoid injuring any unauthorized person, who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered."

In the same opinion we find this language:

"A railroad company has the right to the exclusive use and occupation of its yard and track, except at crossings, or such places as the public are by law authorized to use; otherwise, it could not properly perform its duties to the public. It is not required to anticipate an intrusion of others, and one who enters upon their track without authority does so at his peril, and in case of injury cannot recover, unless it was wantonly inflicted after the danger was discovered."

In the case of Koke's Adm'r., v. Andrews Steel Co. (Ky.) 149 S. W. 968, it was held:

"Those operating a railroad are not required to send a man along to cut off cars to ascertain if anybody is between them before making a coupling to the cars."

And, in the body of the opinion, it is further said:

"Persons who put themselves between cars standing on a sidetrack, without notice to the company of their perilous position, cannot hold the company responsible if they are hurt by some movement of the cars; for all must take notice that cars may be moved at any time."

In the case of Hale v. Columbia & G. Ry. Co., 13 S. E. 536, the Supreme Court of South Carolina, construing a statute requiring the railway company to ring a bell or sound a whistle at a distance of 500 yards from all public crossings, said:

"That one injured while standing in the switch yard of a railway company, and not passing over a crossing, could not recover under the above statute, though the yard was surrounded by streets and the required signals were not given by the company."

The latter part of the instruction complained of, which says:

"The place of the accident was on the private grounds of the defendant and was not a public crossing"

—was justified by the uncontroverted and conclusive facts proven by the plaintiff's own testimony and left no room for doubt as to this fact, and, in the case of Bleecker v. Miller, 40 Okla. 374, 138 Pac. 809, this court said:

"Where a material fact is conclusively shown by undisputed evidence, then the giving of an instruction which assumes that such fact has been established is not error sufficient to justify a reversal of the judgment."

And to the same effect is the case of Byers v. Ingraham, 51 Okla. 440, 151 Pac. 1061.

Under the authorities, heretofore cited, and the proven facts in this case, we are clearly of the opinion that the instruction complained of submitted this phase of the case to the jury in a proper way, and that the instruction was thoroughly justified. To hold otherwise would interfere with the right of a railway company to conduct its necessary business on its own premises and on its own tracks and compel it to have a watchman in its own yards at every car that it was switching on its own switching tracks, which would be an unreasonable requirement.

The next instruction complained of is instruction No. 10, which is as follows:

"You are instructed that for a person to pass under or between the cars of a train which one knows or ought to know is liable to move at any moment or between cars to one of which a train in full view is about to couple, is an act of gross negligence, unless the person attempting it is assured by some one in authority that it is safe to do so, or had the permission, express or implied, of some one in authority to go upon said premises."

This instruction is identical with the holding of this court in the case of Gulf, C. & S. F. Ry. Co. v. Dees, 44 Okla. 118, 143 Pac. 852, except that it has the additional words to fit the facts in this case where it is added:

"Or had the permission, express or implied, of some one in authority to go upon said premises."

This submitted to the jury to determine whether the defendant railway company was guilty of primary negligence, and whether the deceased was there by the permission, express or implied, of some one in authority acting for the defendant railway company.

There is no question of contributory negligence on part of the deceased raised in this case, and it is certainly within the province of the court to instruct the jury as to what constitutes primary negligence on part of either the plaintiff or defendant.

In the late case of Hines, Director General of Railroads, v. Dean, 96 Okla. 107, 220 Pac. 860, in the sixth paragraph of the syllabus, this court said:

"While it is well established by the decisions of this court that the trial court should not instruct the jury that if a certain state of facts is found to exist such facts constitute contributory negligence and the plaintiff cannot recover, it is nevertheless the duty of the trial court to instruct the jury, upon request being made, what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence."

And, in the body of the opinion, the court said in referring to the previous opinions of this court:

"None of these cases hold that it is not the duty of the trial court, upon proper request being made, to instruct the jury what duty the law imposes upon the plaintiff as well as the defendant and that a breach of that duty is negligence. In no other manner can the jury be advised as to the relative duties of the parties."

In support of which several opinions of this court were cited. Upon this authority we are forced to conclude that the instruction complained of was properly given in this case.

The next instruction complained of is No. 11, which is as follows:

"You are further instructed that there was no obligation resting on the defendant or his employes to assume or anticipate that some one would take the risk of crossing between cars, and unless it can be shown to your satisfaction by a preponderance of the evidence, that the crew in charge of the cars in question knew that the deceased was doing so and moved the cars or train in spite of that fact the defendant would not be liable for the death of the deceased unless you further find that the deceased had permission express or implied of the defendant to cross said track at the point in question."

This instruction finds support in the case of Gulf, C. & S. F. Ry. Co. v. Dees et al., supra, except that the court further submits to the jury, in fairness to the plaintiff, whether the deceased was on the premises of the defendant by the permission of the defendant. The jury, in its verdict upon these instructions, determined from the evidence that the deceased had no permission, express or implied, from anyone in authority to go upon the premises at the point in question, and had no permission, express or implied, to go between the cars at the point where he was injured.

We are of the opinion that the instructions complained of were fair to the plaintiff in this case in the light of the other instructions taken together, under the state of the evidence produced here and that the submission of the case to the jury, under the state of the record, was fair to the plaintiff in this case and the court, by its acts in overruling the demurrer to the evidence and refusing to give an instructed verdict in this case and in submitting the cause to the jury upon the instructions given, was fair to the plaintiff, for, as we view it, under the facts proven by the plaintiff, the railway company owed no duty to the deceased other than not to wrongfully or wantonly injure him after his presence became known or after the employes of the company had reason to anticipate his presence at the place where the injury occurred, and this they could not know and had no reasonable ground to anticipate. We are, therefore, of the opinion that the error in this respect is not well founded.

The only remaining ground for reversal in this case is the refusal to give the instruction requested by the plaintiff, which was offered after the written instructions had been given to the jury and after two of the attorneys for plaintiff had finished their arguments to the jury and while one of the attorneys for defendant was presenting his argument. The court refused said instruction on the ground that it came too late, but, be that as it may, we have heretofore held that instruction No. 9, complained of, is a correct instruction upon the question sought to be presented in the requested instruction, and the requested instruction, itself, concedes that the duty to give the signals was not a duty required by statutory law, but contend that it should have been given as a circumstance to be considered with the other evidence in the case as to whether the agents and servants of the railroad company were guilty of negligence or want of ordinary care.

If it were not a duty of the railway company, or its agents and employes, to give the signals, as conceded by the attorneys for both parties in this action, then we cannot conceive how it would be proper to submit this fact to the jury as a circumstance to be taken into consideration with other evidence in the case to prove negli-

gence on part of the agents and employes of the company. · Having heretofore found that the railway company, through its agents and employes, was engaged in the regular and ordinary business of the company, in its own yards, and that the deceased was there unknown to and without invitation or consent of any authorized agent of the company, and at a place where the public was not authorized to be passing over the track of the company, where it was shifting its cars and collecting the same for the purpose of taking them over to its east yard, we are forced to regard, under such circumstances, the death of the deceased to be an unfortunate accident or occurrence for which he, and he alone, was primarily responsible, and that there is no primary negligence of the defendant railway company shown in this case and we are, therefore, of the opinion that the verdict of the jury and the judgment of the trial court thereon are correct and that the same should be and are hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. p. 784. (2) 29 Cyc. p. 451. (3) 33 Cyc. p. 782. (4) 33 Cyc. p. 829. (5) 33 Cyc. p. 779. (6) 29 Cyc. pp. 645, 653. (7) 38 Cyc. p. 1667.